Benny Lee HODGE, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee,

and

Roger Dale Epperson, Appellant,

v.

Commonwealth of Kentucky, Appellee.

Nos. 1999–SC–0050–MR, 1999–SC–
0498–MR, 1999–SC–0051–MR,
1999–SC–0499–MR.

Supreme Court of Kentucky.

Sept. 27, 2001.

As Modified on Denial of Rehearing
March 21, 2002.

John Palombi, Assistant Public Advocate, Department of Public Advocacy,

Frankfort, Elizabeth A. Shaw, Richmond, Counsel for Appellant Hodge.

A.B. Chandler III, Attorney General of Kentucky, Ian G. Sonego, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Randall L. Wheeler, Julia K. Pearson, Assistant Public Advocates, Department of Public Advocacy, Frankfort, Counsel for Appellant Epperson.

A.B. Chandler III, Attorney General of Kentucky, Connie Vance Malone, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

JOHNSTONE, Justice.

Appellants, Roger Dale Epperson and Benny Lee Hodge, were convicted of robbery, burglary, attempted murder, and murder in the Letcher Circuit Court. Each received the death penalty. We affirmed their convictions and sentences on direct appeal to this Court. *Epperson v. Commonwealth*, Ky., 809 S.W.2d 835 (1990), *cert. denied, Hodge v. Kentucky*, 502 U.S. 1037, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992); *cert. denied, Epperson v. Kentucky*, 502 U.S. 1065, 112 S.Ct. 955, 117 L.Ed.2d 122 (1992). Subsequently, both Epperson and Hodge filed motions to vacate the judgments pursuant to RCr 11.42. Both requested an evidentiary hearing on the allegations raised in their motions. The trial court denied the motions without holding an evidentiary hearing. We reverse the denial of an evidentiary hearing on certain issues and remand these cases with directions to hold an evidentiary hearing on those issues set out below.

Except where necessary, we will not attempt to wade through the extraordinary facts proven, alleged, or otherwise alluded to surrounding this case. Rather, our discussion is limited to whether Epperson's and Hodge's RCr 11.42 motions established a sufficient basis for granting relief or for holding an evidentiary hearing on the issues presented.

### JURY TAMPERING

Both Epperson and Hodge made the following factual allegations in their RCr 11.42 motions:

1. Jurors in this case were supplied with newspapers, access to television, visits, and alcoholic beverages during the time that they were sequestered.

2. The Commonwealth's Attorney maintained at least daily *ex parte* contact with the jury, either directly or through other parties.

3. Before the evidence was completed and the case was submitted to the jury for deliberation, the jury had already chosen a foreman, had deliberated the case and, further, had already decided that its verdict would be guilty and that it would recommend the death penalty for both defendants.

The trial court summarily disposed of the jury tampering issue stating:

None of the allegations as to jury misconduct are supported by the record of the trial, and there is no specific factual support asserted for them. The Movants do not indicate what evidence they rely on to show that these alleged incidents happened or what witnesses they intend to call. Because of this, the Court finds no prima facie showing of constitutional error is made . . . .

*Findings of Fact and Conclusions of Law* at 5, 85–CR–0070 (Letcher Circuit Court entered Dec. 2, 1998).

■ Instead of examining whether the record refuted the allegations raised, the

trial court focused on whether the record supported the allegations, which is the incorrect test when addressing the question of whether an evidentiary hearing to resolve issues raised in an RCr 11.42 is required.

██ The initial question to be asked is whether the alleged error is such that the movant is entitled to relief under the rule. "In a petition filed under RCr 11.42 the movant must show that there has been a violation of a constitutional right, a lack of jurisdiction, or such a violation of a statute as to make the judgment void and therefore subject to collateral attack." *Lay v. Commonwealth*, Ky., 506 S.W.2d 507, 508 (1974). If that answer is yes, then an evidentiary hearing on a defendant's RCr 11.42 motion on that issue is only required when the motion raises "an issue of fact that cannot be determined on the face of the record." *Stanford v. Commonwealth*, Ky., 854 S.W.2d 742, 743–44 (1993), *judgment affirmed*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989). In the case at bar, the allegations of juror tampering rise to the level of a potential violation of a constitutional right.

██ The right to an unbiased decision by an impartial jury in a criminal trial is a basic principle of due process. *Grooms v. Commonwealth*, Ky., 756 S.W.2d 131, 134 (1988). Jury tampering may deprive a defendant of his right to an impartial jury so as to violate the right to due process. The U.S. Supreme Court held that jury tampering in a criminal trial is presumptively prejudicial. *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654, 655 (1954).

In *Remmer*, an unnamed party communicated with a juror—who later became the foreman—and suggested to the juror that he could profit by bringing in a verdict favorable to the defendant. *Id.* at 228, 74 S.Ct. at 450, 98 L.Ed. at 655. The juror

related the incident to the judge who advised the prosecutor, but not defense counsel. *Id.*, 74 S.Ct. at 450–51, 98 L.Ed. at 655. Defense counsel first learned of the contact after trial. *Id.* Subsequently, the defendant moved for a new trial and requested a hearing to determine the facts of the contact. *Id.*, 74 S.Ct. at 451, 98 L.Ed. at 655. The district court denied the motion and the court of appeals affirmed. The *Remmer* Court reversed and remanded for the district court to hold a hearing to "determine the circumstances, the impact upon the juror, and whether or not it was prejudicial. . . ." *Id.* at 230, 74 S.Ct. at 451–52, 98 L.Ed. at 656. The jury tampering alleged in the present case is much graver than that alleged in *Remmer*.

██ Next, we conclude that the jury tampering allegations are pled with sufficient specificity. See *Sanborn v. Commonwealth*, Ky., 975 S.W.2d 905, 909 (1998), *cert. denied*, 516 U.S. 854, 116 S.Ct. 154, 133 L.Ed.2d 98 (1995) ("Conclus[ory] allegations which are not supported by specific facts do not justify an evidentiary hearing because RCr 11.42 does not require a hearing to serve the function of a discovery deposition."). Epperson and Hodge do not simply raise a blanket allegation of jury tampering. Rather, they each allege specific incidents of tampering, *e.g.*, daily *ex parte* contact by the Commonwealth's Attorney, the supplying of newspapers to the jury, and providing the jury access to television, etc. The trial judge discounted these allegations because Epperson and Hodge did not supply the underlying factual bases for these charges, *i.e.*, the facts they intended to rely on to prove the allegation.

## FAILURE TO INTRODUCE MITIGATING EVIDENCE

During the penalty phase, neither defense counsel presented any witnesses to

testify on either Epperson's or Hodge's behalf. Nor did defense counsel for either defendant introduce any other mitigating evidence. The only evidence presented on Epperson's behalf in the penalty phase was a stipulation that: (1) he had no significant history of prior criminal activity; (2) he voluntarily returned to Kentucky to face the charges against him; and (3) he had a wife and child. Likewise, the only evidence presented on Hodge's behalf during the penalty phase was a stipulation that: (1) he had a wife and three children; (2) he had a public-job work record; and (3) he lived and resided in Tennessee.

In his RCr 11.42, Hodge argues his defense counsel was ineffective in the penalty phase for "failing to investigate, discover, and/or present proof which was readily available at the time of trial and which would have been substantial evidence to refute the prosecution's argument that the only way to punish [Hodge] was to kill him." In support of this argument, he argues that his counsel conceded that he was unprepared to proceed with the penalty phase.

Likewise, Epperson argues in his RCr 11.42 motion that his defense counsel was

> ineffective for failing to investigate, discover and present evidence readily available at the time of trial which would have cast doubt on ... Epperson's ability to plan or even intend the crimes he was accused of, cast doubt on whether he was not acting under extreme emotional disturbance, and [would have] provided powerful mitigation explaining who ... Epperson was, how he got to be that way, and why he may have ended up in the Acker home with Bartley and Hodge.

Both Epperson and Hodge support their arguments with a list of mitigating evidence that they claim that their defense counsel should have discovered and put before the jury.

The trial court concluded that the failure to introduce mitigating evidence was not ineffective assistance of counsel:

> The record shows that the jury was made aware of mitigating circumstances for both Movants by stipulated facts read to the jury by the judge.... In addition, both defense counsel made impassioned and moving pleas in closing argument for their clients, asking that the death penalty not be imposed. Trial counsel has no absolute duty to present mitigating character evidence at all, *Bolender v. Singletary*, 16 F.3d 1547 (11th Cir.1994), nor is counsel required to present all available evidence in order to render effective assistance. *Waters v. Thomas*, 46 F.3d 1506 (11th Cir.1995). Also, had counsel introduced additional evidence, the prosecution might have introduced evidence in rebuttal, such as victim impact testimony, which would have made the jury more likely to impose the death penalty. All in all, the court does not find counsel's performance during the penalty phase to be deficient. Although there may have been some additional evidence that could have been introduced on behalf of the Movants, the Court finds that Movants have failed to show a reasonable probability that the outcome of the proceeding (the sentence of death that they received) would have been any different if this evidence had been admitted.... In this case, giv[en] the atrocious and heinous nature of the crime, the Court cannot say there is a reasonable probability that even had this evidence been introduced, the result of the proceeding would have been any different.

*Findings of Fact and Conclusions of Law, supra*, at 7.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets forth the standard of review for an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Further, there exists a strong presumption that counsel's performance was effective. *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

Under *Strickland,* defense counsel has an affirmative duty to make reasonable investigation for mitigating evidence or to make a reasonable decision that particular investigation is not necessary. *Id.* at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. The reasonableness of counsel's investigation depends on the circumstances of the case. *Id.* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

The trial court in this case relied on a pair of Eleventh Circuit Court of Appeals' decisions to support its conclusion that defense counsel has neither the absolute duty to present mitigating character evidence, nor the duty to present all available mitigating evidence. While we agree with the trial court on these points, we do not believe that the trial court went far enough in its analysis of Eleventh Circuit cases on this issue.

> An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. In evaluating whether counsel has discharged this duty to investigate, develop, and present mitigating evidence, we follow a three-part analysis. *First,* it must be determined whether a *reasonable investigation* should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a *tactical choice* by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. If the choice was not tactical and the performance was deficient, then it must be determined whether there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

*Porter v. Singletary,* 14 F.3d 554, 557 (11th Cir.1994), *cert. denied,* 513 U.S. 1009, 115 S.Ct. 532, 130 L.Ed.2d 435 (internal citations omitted and emphasis in original).

In the case at bar, the trial court did not determine whether either defense counsel conducted any investigation for mitigating evidence. From the record before us, it appears that neither Epperson's nor Hodge's defense counsel conducted any investigation, though an evidentiary hearing might prove otherwise. If there was no investigation, then their performance was deficient. *See, e.g., Austin v. Bell,* 126 F.3d 843, 849 (6th Cir.1997), *cert. denied,* 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998), and *cert. denied,* 523 U.S. 1088, 118 S.Ct. 1547, 140 L.Ed.2d 695 (1998). The trial court then would have to determine "whether there is a reasonable probability that, but for counsel[s'] unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80

L.Ed.2d at 698. In the case at bar, this determination is made by examining whether there is a reasonable probability that the jury would have weighed the mitigating factors that should have been admitted and the aggravating factors differently had counsel performed adequately. *See Skaggs v. Parker,* 235 F.3d 261, 274 (6th Cir.2000).

 Instead of determining what mitigating evidence could have and should have been admitted, the trial court merely noted that "there may have been some additional evidence that could have been introduced on behalf of the Movants...." This is not sufficient. Before any possible mitigating evidence can be weighed in a meaningful manner, that evidence first must be determined and delineated. This is the proper function of an evidentiary hearing.

An evidentiary hearing must be held in this case to determine whether the failure to introduce mitigating evidence was trial strategy, or "an abdication of advocacy." *Austin,* 126 F.3d at 849. And, if defense counsel's advocacy was deficient, then a finding must be made of what mitigating evidence was available to counsel. Thereafter, the trial court must then determine whether there is a reasonable probability that the jury would have weighed the mitigating and aggravating factors differently.

### OTHER CLAIMS

 Both Epperson and Hodge argue that they were denied effective assistance of counsel due to each of their counsel's failure to adequately voir dire the jury, failure to adequately prepare for the testimony of Anthony Smith and Donald Bartley, and failure to adequately cross-examine each of these witnesses. Further, they argue that the Commonwealth's Attorney failed to disclose exculpatory material to the defense in violation of *Brady v. Mary-*

*land,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Finally, they each argue that they were denied effective assistance of counsel due to a conflict of interest between Epperson's counsel, Lester Burns, and Hodge's counsel, Dale Mitchell. As found by the trial court, each of these allegations were addressed and resolved on direct appeal and cannot be raised in an RCr 11.42 motion. *Thacker v. Commonwealth,* Ky., 476 S.W.2d 838 (1972).

### RECUSAL OF TRIAL JUDGE

 Both Epperson's and Hodge's allegations of jury tampering center on charges that the Commonwealth's Attorney prosecuting their case, James Wiley Craft, acted improperly. While the allegations are somewhat interwoven, they argue in part that Craft specifically had *ex parte* communications with the jury foreman, Eugene Banks. Further, they argue that Craft and Banks were good friends and—at the time of trial—Craft was dating Banks's stepdaughter, Bridgette Combs.

At some point during the pendency of Epperson's and Hodge's RCr 11.42 motions before the trial court, Craft's son worked for Judge Wright as his law clerk. Further, Judge Wright openly acknowledged that he—like Craft—had at one time been romantically involved with Combs.

Epperson and Hodge first moved for Judge Wright to recuse himself, which motion was denied. Pursuant to KRS 26A.020, Epperson and Hodge then moved this Court for Judge Wright's recusal on grounds that his employment of Craft's son and his former romantic involvement with Combs prevented him from rendering an unbiased decision on their RCr 11.42 motions. They alleged that Judge Wright's former relationship with Combs was especially troubling because she likely

would be a material witness at any evidentiary hearing on the jury tampering charges. Their concerns were based on the fact that Combs's stepfather, jury foreman Banks, had died and Combs's testimony was necessary to fill in the blanks regarding Craft's relationship with Banks. We denied the motion. But in *Foster v. Overstreet*, Ky., 905 S.W.2d 504 (1995), we held that a defendant who unsuccessfully seeks recusal of a judge, may still raise the issue on appeal from an adverse final judgment. *Id.* at 505–06.

We cannot say that the trial court abused its discretion in denying the motion to recuse. But we believe that, if it appears likely that Combs will be called as a witness at the evidentiary hearing on the jury tampering allegations, then Judge Wright should reconsider the recusal motion in order to prevent the appearance of impropriety.

### CONCLUSION

For the reasons set forth above, we reverse the trial court's denial of Epperson's and Hodge's RCr 11.42 motions for an evidentiary hearing on the issues of jury tampering and ineffective assistance of counsel as it relates to trial counsels' failure to introduce mitigating evidence. Therefore, we remand this case for an evidentiary hearing on these issues.

LAMBERT, C.J., COOPER and KELLER, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with GRAVES, J., joining that dissent.

STUMBO, J., not sitting.

WINTERSHEIMER, Justice, Dissenting.

I respectfully dissent from the majority opinion because the RCr 11.42 motions of Epperson and Hodge, do not establish a sufficient basis for granting the relief requested or for holding an evidentiary hearing on the issues presented.

Initially, the RCr 11.42 motion by the defendants claiming jury tampering failed to allege any specific facts or sources of evidence to support the conclusory allegations. The circuit judge properly rejected these claims because there was no specific factual support for them. The alleged supporting facts which the defendants argue before this Court were not presented to the circuit court until after the RCr 11.42 motion was denied and the notice of appeal had been filed. Each allegation was stated in a single sentence without citation to the record. It has been held that conclusory allegations of juror misconduct or information from anonymous sources is not sufficient to require a hearing on the alleged jury misconduct. *See Sanborn v. Commonwealth*, Ky., 975 S.W.2d 905 at 911 (1998); *Smith v. Commonwealth*, Ky., 734 S.W.2d 437 at 445 (1987).

The allegations of jury tampering do not ascend to the level of even a potential violation of any constitutional right. The obviously lengthy 51 page RCr 11.42 motion with innumerable attachments does not provide the necessary specifics to support the complaint that is made here. This Court has held that as to each individual claim in an RCr 11.42 motion, the motion must set forth all facts necessary to establish the existence of a constitutional violation and the court will not presume that facts omitted from the motion establish the existence of such a violation. *See Stanford v. Commonwealth*, Ky., 854 S.W.2d 742 at 748 (1993); *Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573 at 576 (1990). *Wilson v. Commonwealth*, Ky., 975 S.W.2d 901 (1998), indicated that even if an evidentiary hearing was necessary

regarding some of the claims, a reviewing court should limit that hearing to only those issues which were not refuted by the record. It should be noted that trial counsel for Hodge was not constitutionally ineffective at the penalty phase of the case because defense counsel was able to prevent the prosecution from introducing the prior felony convictions of Hodge and to persuade the prosecutor to enter a stipulation regarding the background and family relationships of Hodge.

Finally, it appears that the attorneys representing the defendants were aware that their original motion was inadequate because after the RCr 11.42 motions were denied, they filed a CR 59.05 motion alleging more specific facts and containing statements from a former deputy sheriff. It would appear that this would be a strong indication that the complaint relative to the failure to introduce mitigating evidence was actually trial strategy and not ineffective assistance of counsel.

I would affirm the order of the circuit court overruling the RCr 11.42 motions.

GRAVES, J., joins this dissent.