Benny Lee HODGE, Petitioner,

and

Roger Epperson, Intervening Petitioner,

v.

Hon. Eddy COLEMAN, Special Judge, Letcher Circuit Court; Commonwealth of Kentucky (Real Party in Interest); and Department of Public Advocacy (Real Party in Interest), Respondents.

No. 2007–SC–000073–OA.

Supreme Court of Kentucky.

Jan. 24, 2008.

As Corrected Jan. 25, 2008.

Laurence E. Komp, Manchester, MO, Armand I. Judah, Judah–McLeod PLLC, Louisville, KY, Counsel for Appellant.

David M. Barron, Heather Christina McGregor, Department of Public Advocacy, Frankfort, KY, Counsel for Intervening Appellant.

Judge Eddy Coleman, Pikeville, KY, Counsel for Appellee.

Jack Conway, Attorney General of Kentucky, David A. Smith, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Rick L. Bartley, Commonwealth Attorney, Pikeville, KY, Counsel for Real Party in Interest, Commonwealth of Kentucky.

Damon L. Preston, Department of Public Advocacy, Frankfort, KY, Counsel for Real Party in Interest, Department of Public Advocacy.

## OPINION OF THE COURT BY JUSTICE MINTON AND ORDER GRANTING PETITION FOR WRIT OF MANDAMUS

This case requires us to determine if indigent post-conviction petitioners are entitled to public funds for the travel expenses of their out-of-county witnesses in cases in which a court has determined that an evidentiary hearing is necessary to resolve the post-conviction motion. We unanimously held in *Stopher v. Conliffe*[1] that Kentucky Revised Statutes (KRS) 31.185 "does not apply to post-conviction proceedings."[2] Despite *Stopher*'s sweeping prohibition against the application of KRS 31.185 to post-conviction proceedings, approximately one year later we issued *Commonwealth v. Paisley*[3] in which we, at a minimum, left open the possibility that KRS 31.185 could be used as a source for funding the hiring of expert witnesses for certain post-conviction petitioners. This divergent approach to the potential availability of public funds for indigent post-conviction petitioners has, understandably, caused confusion. In an effort to eliminate that confusion, we now partially overrule *Stopher* and hold that the special fund created in KRS 31.185(4) can be used to pay out-of-county witness expenses for indigent post-conviction petitioners, provided that a court has found that (1) the petitioner's post-conviction petition raises an issue that cannot be resolved without an evidentiary hearing and (2) the proposed out-of-county witness's live testimony at the evidentiary hearing is necessary for a full presentation of the petitioner's case.

## I. FACTS AND PROCEDURAL HISTORY.

In order to understand the issues presented in the current case, it is necessary first to recount its lengthy history. Benny Lee Hodge and Roger Epperson were sentenced to death for their convictions for robbery, burglary, attempted murder, and murder. We affirmed their convictions and sentences on direct appeal.[4] Following direct appeal, the trial court denied, without an evidentiary hearing, their Kentucky Rules of Criminal Procedure (RCr) 11.42 motions for post-conviction relief. We reversed and remanded the denial of the RCr 11.42 motions with instructions to the trial court to hold an evidentiary hearing on their claims of jury tampering and of ineffective assistance of counsel for failure to present mitigation evidence.[5]

On remand, the trial court severed the jury tampering and ineffective assistance of counsel claims. The trial court denied Hodge and Epperson's request for funding

1. 170 S.W.3d 307 (Ky.2005)

2. *Id.* at 309–10.

3. 201 S.W.3d 34 (Ky.2006)

4. *Epperson v. Commonwealth,* 809 S.W.2d 835 (Ky.1990).

5. *Hodge v. Commonwealth,* 68 S.W.3d 338, 342, 345 (Ky.2001) ("In the case at bar, the allegations of juror tampering rise to the level of a potential violation of a constitutional right. . . . An evidentiary hearing must be held in this case to determine whether the failure to introduce mitigating evidence was trial strategy, or 'an abdication of advocacy.' *Austin [v. Bell],* 126 F.3d [843,] . . . 849 [ (6th Cir.1997) ]. And, if defense counsel's advocacy was deficient, then a finding must be made of what mitigating evidence was available to counsel. Thereafter, the trial court must then determine whether there is a reasonable probability that the jury would have weighed the mitigating and aggravating factors differently.").

to secure the attendance of out-of-state witnesses for the jury-tampering issue, citing our decision in *Stopher.* Epperson and Hodge sought emergency relief and a writ of mandamus compelling funding.[6] Former Justice Donald C. Wintersheimer, who was designated to hear and decide these emergency motions, denied the requests for emergency relief; and in January 2007, we unanimously denied Hodge and Epperson's petition for a writ of mandamus.

The trial court has already conducted a hearing on the jury-tampering portion of Hodge and Epperson's RCr 11.42 motions and rejected their claim for relief on that issue. Nevertheless, Epperson has filed a motion asking us to reconsider our order denying his request for funding. That motion for reconsideration has been ordered to be held in abeyance pending the resolution of the cases at hand.

Early last year, Hodge filed a second petition for a writ of mandamus, seeking state funds to secure the attendance of twenty-three out-of-state witnesses for the ineffective assistance of counsel portion of the bifurcated post-conviction proceedings. According to Hodge's petition, he was born and raised in Tennessee; and he believes these Tennessee witnesses are necessary to his claim regarding mitigation. Hodge contends that he is entitled to funds to secure the attendance of those witnesses at the hearing previously ordered by this Court.

As an intermediate step, we ordered the trial court to rule on Hodge and Epperson's motion for out-of-state witness funds as a predicate to this ruling on the merits of the writ. The trial court issued an order denying the motion for travel expenses. Following our instruction, the trial court has not yet conducted a hearing on the ineffective assistance of counsel portion of Hodge and Epperson's RCr 11.42 motions.

We have entered an order granting Epperson's motion to intervene as a petitioner in Hodge's petition for a writ. So the issues raised in the writ are squarely before us and apply to Epperson and to Hodge.

## II. *ANALYSIS.*

First, we must determine whether Hodge and Epperson—or, more broadly speaking, any indigent post-conviction petitioner whose petition merits an evidentiary hearing—are foreclosed from using public funds for the travel expenses of their out-of-county witnesses. Because we find that the answer to that question is no, we then must determine if Hodge and Epperson have met the standards necessary for the granting of a writ. And the answer to that question is yes.

### A. *Availability of Public Funds Under KRS 31.185.*

■ The post-conviction petitioner in *Stopher* sought a writ to compel the trial court to conduct an ex parte hearing under KRS 31.185 to seek funds for an expert to support petitioner's motion.[7] We held that

---

**6.** *See* Case Nos.2006–SC–000825 and 2006–SC–000829.

**7.** KRS 31.185 provides, in relevant part, as follows:

(1) Any defending attorney operating under the provisions of this chapter is entitled to use the same state facilities for the evaluation of evidence as are available to the attorney representing the Commonwealth.

If he or she considers their use impractical, the court concerned may authorize the use of private facilities to be paid for on court order from the special account of the Finance and Administration Cabinet.

(2) The defending attorney may request to be heard ex parte and on the record with regard to using private facilities under subsection (1) of this section. If the defending attorney so requests, the court shall con-

the issue of whether KRS 31.185 provided expert funds for post-conviction petitioners was a matter of first impression and that the resolution of that issue was "nothing more than a matter of statutory interpretation." [8] We focused upon the "defending attorney" language in subsections (1) and (2) of KRS 31.185 and held that that language evidenced the General Assembly's intent "to limit the use of funds or facilities allowed under KRS 31.185 to attorneys representing an indigent defendant *at trial*." [9] Or, in other words, "the plain meaning of KRS 31.185(2) indicates that it only applies to trial and does not apply to post-conviction proceedings." [10] Later in the opinion, however, we ventured further and flatly declared that "KRS 31.185 [in its

entirety] does not apply to post-conviction proceedings." [11]

In *Paisley*, the trial court ordered the Finance and Administration Cabinet to pay $5,000 for private mental health testing of a post-conviction petitioner in order to determine if that petitioner was mentally retarded and, thus, ineligible for the death penalty.[12] The Commonwealth petitioned this Court for a writ to prohibit the trial court from ordering it to pay for that private mental health testing.[13]

We noted that "[t]he establishment of mitigating circumstances at the penalty phase is of the greatest importance when a defendant is facing the death penalty." [14] So we held that the trial court properly ordered mental health testing to be per-

duct the hearing ex parte and on the record.

(3) Any direct expense, including the cost of a transcript or bystander's bill of exceptions or other substitute for a transcript that is necessarily incurred in representing a needy person under this chapter, is a charge against the county, urban-county, charter county, or consolidated local government on behalf of which the service is performed and shall be paid from the special account established in subsection (4) of this section and in accordance with procedures provided in subsection (5) of this section. However, such a charge shall not exceed the established rate charged by the Commonwealth and its agencies.

(4) The consolidated local government, fiscal court of each county, or legislative body of an urban-county government shall annually appropriate twelve and a half cents ($0.125) per capita of the population of the county, as determined by the Council of Local Governments' most recent population statistics, to a special account to be administered by the Finance and Administration Cabinet to pay court orders entered against counties pursuant to subsection (1) or (3) of this section. The funds in this account shall not lapse and shall remain in the special account.

(5) The Finance and Administration Cabinet shall pay all court orders entered pursuant to subsection (1) or (3) of this section from the special account until the funds in the

account are depleted. If in any given year the special account including any funds from prior years is depleted and court orders entered against counties pursuant to subsection (1) or (3) of this section for that year or any prior year remain unpaid, the Finance and Administration Cabinet shall pay those orders from the Treasury in the same manner in which judgments against the Commonwealth and its agencies are paid.

(6) Expenses incurred in the representation of needy persons confined in a state correctional institution shall be paid from the special account established in subsection (4) of this section and in accordance with the procedures provided in subsection (5) of this section.

8. *Stopher,* 170 S.W.3d at 308.

9. *Id.*

10. *Id.*

11. *Id.* at 309–10.

12. 201 S.W.3d at 36.

13. *Id.* at 35.

14. *Id.* at 36 (*quoting Smith v. Commonwealth,* 734 S.W.2d 437, 456 (Ky.1987) (Leibson, J., dissenting)).

formed on the petitioner.[15] But we held that the trial court erred when it ordered the Commonwealth to pay for private mental health testing without petitioner having first shown that the use of the state mental health facilities for the testing was impractical.[16] And we held that the Commonwealth was entitled to a writ because it would have been unable to recoup the $5,000 from the indigent petitioner once those funds had been expended, and the Commonwealth faced the potential of having to pay for private funding for numerous post-conviction petitioners.[17]

Confusion in our law has resulted from the fact that *Stopher* seemed to establish a bright line rule that no funds were available under KRS 31.185 for indigent post-conviction petitioners while *Paisley*, without even mentioning *Stopher*, seemed to open up the possibility for expert funding for a postconviction petitioner. This confusion is magnified by the fact that *Paisley*, rather than quoting our earlier holding in *Stopher* that KRS 31.185 had no application to post-conviction petitioners, instead relied upon KRS 31.185—the very same statute discussed at length in *Stopher*—for the proposition that a post-conviction petitioner may be entitled to public funds for the hiring of an expert witness if the post-conviction petitioner could show that the use of the state facilities was impractical.[18]

Although much confusion could have been avoided if *Paisley* contained a discussion of *Stopher*, the core holdings of the two opinions are not entirely irreconcilable. The post-conviction petitioner in *Stopher* asked us to issue a writ to order the trial court to hold a hearing on whether the petitioner was entitled to expert funds under KRS 31.185 to bolster the petitioner's recently filed RCr 11.42 motion.[19] At the time we issued our opinion, no Kentucky court of competent jurisdiction had determined that the post-conviction petitioner in *Stopher* had presented a known grievance necessitating a hearing, meaning that it would have been premature to order expert funds for a hearing on an RCr 11.42 motion when the RCr 11.42 motion itself may not have even stated grounds sufficient to necessitate a hearing.[20]

In *Paisley*, however, the trial court had already determined that the petitioner's RCr 11.42 motion could not be resolved without an evidentiary hearing.[21] So the issue of expert funding in *Paisley* was properly before the Court because an evidentiary hearing was going to be held. All that was truly at issue in *Paisley* was whether the trial court could order public funds to be expended for the post-conviction petitioner to have an independent expert mental health evaluation without having first shown that the state examination

---

15. *Id.*

16. *Id.*

17. *Id.* at 37.

18. *Id.* at 36. Compare this holding with our statement in *Stopher* that it was "clear from the use of the words in the statute [KRS 31.185] that the General Assembly intended to limit the use of funds or facilities allowed under KRS 31.185 to attorneys representing an indigent defendant *at trial.*" 170 S.W.3d at 309.

19. *Stopher,* 170 S.W.3d at 307.

20. *See, e.g., Haight v. Commonwealth,* 41 S.W.3d 436, 441–42 (Ky.2001) (holding that purpose of RCr 11.42 was to provide a forum for known grievances and that an evidentiary hearing is required only if the 11.42 motion raises issues which are not refuted by the record).

21. 201 S.W.3d at 36.

facilities were impractical for that purpose.[22]

When read in conjunction, *Stopher* and *Paisley* jointly hold that an indigent post-conviction petitioner may not receive public funds under KRS 31.185 unless a court of competent jurisdiction, whether at the trial or appellate level, has determined that the post-conviction petition sets forth allegations sufficient to necessitate an evidentiary hearing. Or, in other words, the threshold requirement for an indigent post-conviction petitioner to receive funds under KRS 31.185 is for a court of competent jurisdiction to order that a hearing be held on the allegations contained in the petition. Given that holding, it is clear that we went too far in *Stopher* when we said that KRS 31.185 has no application to post-conviction proceedings.

Thus, to the extent that *Stopher* holds that KRS 31.185 is never available as an avenue for indigent post-conviction petitioners to obtain public funds, *Stopher* is overruled.[23]

The mere fact that an indigent post-conviction petitioner meets the threshold to receive public funds under KRS 31.185(3) and (6), however, is not an automatic funding entitlement for every out-of-county witness whose name appears on the petitioner's witness list. Rather, the trial courts in the Commonwealth have the inherent authority to control the proceedings before them to eliminate unjustifiable expense and delay. This inherent authority includes discretion to examine the post-conviction petition and the list of proposed witnesses submitted by indigent post-conviction petitioners to determine what is reasonably necessary for those petitioners fully to present their claims.

In the case at hand, Hodge has apparently sought travel-related expenses for twenty-three out-of-county witnesses. The Letcher Circuit Court has the inherent discretion to scrutinize that proposed witness list and, after giving Hodge an opportunity to be heard in the matter, to authorize travel expenses for those out-of-county witnesses reasonably necessary for Hodge to present his claims fully. If the trial court finds that some of the persons Hodge desires to call as witnesses would present repetitive testimony or are otherwise unnecessary for Hodge's claims to be presented fully, the trial court may refuse to authorize travel expenses for those unnecessary witnesses.

■ Finally, we firmly reject the Commonwealth's contention that an out-of-county witness called on behalf of an indigent post-conviction petitioner must demonstrate indigency before being eligible for travel expense reimbursement. A person need not lay bare his or her financial status in order to perform his or her civic duty by testifying at an official court proceeding. Our conclusion is reinforced by the fact that witnesses on behalf of the Commonwealth are not required to prove

**22.** Of course, also underlying our holding in *Paisley* was the United States Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which prohibited the execution of mentally retarded individuals. The post-conviction petitioner in *Paisley* claimed that his death sentence ran afoul of *Atkins* because he was mentally retarded. 201 S.W.3d at 36. The trial court found that the post-conviction petition was sufficient to warrant a hearing. The only issue before us was whether the petition-er was entitled to private mental health testing at the Commonwealth's expense without having first shown that the usage of the state's mental health facilities was impractical.

**23.** We express no opinion at this time on whether indigent post-conviction petitioners are entitled to public funds for expert witness fees under KRS 31.185. That issue is not before us in this original action.

indigency before being eligible for reimbursement. Out-of-county witnesses called on behalf of indigent post-conviction petitioners are entitled to reimbursement in the same manner as are witnesses for the Commonwealth.[24]

In short, we hold that indigent post-conviction petitioners are entitled to public funds for travel expenses for their out-of-county witnesses under KRS 31.185(3) and (6), provided that a court of competent jurisdiction has determined that an evidentiary hearing is necessary in order to resolve the allegations contained in the post-conviction petition. A ruling to the contrary would deprive those indigent post-conviction petitioners of their right to present fully their non-frivolous claims to the court. The trial courts must exercise discretion to review the post-conviction petitioner's proposed witness list and to authorize travel reimbursement only for those out-of-county witnesses reasonably necessary for the post-conviction petitioner to present fully his claims. Travel expenses for the witnesses who reside out-of-county shall be paid from the special fund established by KRS 31.185(4)-(5) and shall be governed by the same general rules, regulations, and limits that are applicable to out-of-county witnesses called on behalf of the Commonwealth, regardless of the financial status of the witnesses.

### B. *Standard for Granting Writ.*

■ We may grant a writ only upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.[25]

Because Epperson and Hodge do not allege that the trial court is proceeding outside its jurisdiction, our focus is on the second type of writ classification.

■ A writ is an extraordinary remedy that should be issued only in exceptional circumstances.[26] In other words, a writ may not issue "unless the petitioner can demonstrate that traditional post hoc appellate procedures do not provide him or her with an adequate remedy."[27]

■ The "irreparable injury" requirement is not as absolute, however. Indeed, a court may grant a writ without a showing of irreparable harm,

> provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administra-

---

24. *See* KRS 421.015 (providing that out-of-county witnesses are allowed travel reimbursement at the level allowed for state employees); KRS 421.030 (governing expenses for witnesses on behalf of the Commonwealth who reside outside Kentucky).

   Of course, a trial court also may utilize its discretion to order prepayment of necessary witness expenditures if the court finds expense prepayment to be more appropriate than expense reimbursement.

25. *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004). Although *Hoskins* involved a petition for a writ of prohibition, we have utilized the same standard if a petitioner seeks a writ of mandamus. *See, e.g., Stopher,* 170 S.W.3d at 308 n. 2.

26. *See, e.g., Fletcher v. Graham,* 192 S.W.3d 350, 356 (Ky.2006).

27. *Flynt v. Commonwealth,* 105 S.W.3d 415, 422 (Ky.2003).

tion of justice generally will suffer the great and irreparable injury." [28]

It appears clear to us that Hodge and Epperson have satisfied the standards necessary to the granting of a writ. *Stopher* and *Paisley* were writ cases. And a finding that Hodge and Epperson should merely raise these issues on a direct appeal seems an unreasonable burden on the proper administration of justice in that denying the writ would prevent Hodge and Epperson from presenting witnesses on their behalf at the post-conviction hearing that we have already ordered. In turn, Hodge and Epperson would likely then appeal, meaning that we would in that future appeal reverse the trial court's decision to deny funding, starting the process anew. Such needless delay is improper and unnecessary because both the Commonwealth and the petitioners herein are entitled to finality. Furthermore, the availability of funds for post-conviction petitioners is certainly a matter of great importance to the courts throughout the Commonwealth,[29] a fact that is magnified in this case since we previously deemed Hodge and Epperson's mitigation-related claim to involve a "potential violation of a constitutional right."[30] Therefore, we find that Hodge an Epperson have satisfied the prerequisites necessary to the granting of a writ.

## III. *CONCLUSION.*

For the reasons previously stated herein, Benny Lee Hodge's and Roger Epperson's petition for a writ of mandamus is GRANTED. In a manner consistent with this opinion, the Letcher Circuit Court must approve travel-related reimburse-

ment expenses for out-of-county witnesses called on behalf of Hodge or Epperson.

All sitting, except NOBLE, J.

ABRAMSON and SCHRODER, JJ., concur.

CUNNINGHAM, J., concurs by separate opinion in which LAMBERT, C.J., and SCOTT, J., join.

Concurring Opinion by Justice CUNNINGHAM.

I concur in the well-written opinion of Justice Minton. I write only to emphasize a very important point, at least from my perspective, regarding trial guidance.

Justice Minton ably speaks to the discretion allowed the trial judge in paring down needed witnesses and eliminating those that are unnecessary. Because of the age of this case, I am bold enough to suggest that the trial court might decide that none of them are necessary. The court's broad discretion should also allow the utilization of affidavits, avowals, and other procedural aids available in filtering through proposed testimony.

This case went to trial almost twenty years ago. The crimes were committed over twenty-two years ago. Before the trial court is a claim of ineffective assistance of counsel at the trial during sentencing. The issue involves what mitigation evidence was available to defense counsel long ago when the case was tried. Supposedly, twenty-three mitigation witnesses from Tennessee are now being sought—many of whom, if not all, are relatives. What value any of these stale witnesses would have to mitigate, at this late

---

**28.** *Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky. 1961).

**29.** *See, e.g., Paisley,* 201 S.W.3d at 37 (holding that facts "capable of frequent repetition" is a factor to be considered in finding that a peti-

tioner had satisfied the irreparable injury prong of the standard for granting a writ).

**30.** *Epperson,* 68 S.W.3d at 342.

date, such an atrocious crime, committed so long ago, makes me wonder. This is not to mention the implausibility, if not impossibility, of defense counsel at trial in the distant past—or those called on his or her behalf—now being able to accurately recall why such witnesses were not presented, or even if counsel was ever made aware of them.

Basic fairness must surface through the foggy haze of time for the Commonwealth, as well as Petitioners. We hold only, at least in my opinion, that public funds are available for these witnesses—nothing more. *See Commonwealth v. Paisley,* 201 S.W.3d 34 (Ky.2006).

LAMBERT, C.J.; and SCOTT, J., join.