RENDERED: NOVEMBER 1, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky



2018-SC-000472-OA

COMMONWEALTH OF KENTUCKY                                    PETITIONER

V.                          IN THE SUPREME COURT

HONORABLE JOHN R. GRISE, CHIEF                             RESPONDENT
CIRCUIT JUDGE, WARREN CIRCUIT
COURT

AND

WILLIAM H. MEECE                              REAL PARTY IN INTEREST

## OPINION AND ORDER BY CHIEF JUSTICE MINTON

## DENYING PETITION FOR WRIT OF PROHIBITION

The Commonwealth petitions this Court for a writ to prohibit

enforcement of the trial court's order authorizing the use of public funds for the

procurement of private-expert assistance in William Harry Meece's post-

conviction proceedings under Kentucky Rule of Criminal Procedure (RCr)

11.42. We find that the trial court did not abuse its discretion in ordering the

use of public funds and deny the Commonwealth's petition.

## I.     BACKGROUND.

A circuit court jury found Meece guilty of three counts of murder, three

counts of complicity to murder, first-degree burglary, and two counts of first-

degree robbery and imposed the death penalty. This Court affirmed the

resulting judgment.[1] Meece later moved to vacate the judgment under RCr 11.42.[2] The trial court judge, Judge John R. Grise, held a status conference, at which both parties appeared, to determine a briefing schedule and schedule an evidentiary hearing on Meece's motion. Following the status conference, the trial court scheduled an evidentiary hearing for February of the following year.

Meece later requested the use of private experts in proving his RCr 11.42 motion and requested that the proceedings to determine funding for those experts be conducted ex parte under Kentucky Revised Statute (KRS) 31.185. After receiving a copy of the trial court's order scheduling the ex parte hearing, the Commonwealth objected to the expert-witness request hearing being held without its participation and moved to vacate the order setting the ex parte hearing.

The trial court then conducted a hearing in which both parties participated to determine whether Meece's public-funds request should be heard ex parte. The trial court ultimately concluded that KRS 31.185 required the entire hearing concerning Meece's public-funds request to be heard ex parte and denied the Commonwealth's motion to vacate its earlier order. Two days later, the trial court heard ex parte Meece's public-funds request and issued an order granting in part and denying in part Meece's public-funding request.

---

[1] See Meece v. Commonwealth, 348 S.W.3d 627 (Ky. 2011). Having extensively reviewed the record in that case, we limit the background to the facts and procedural history relevant to the writ petition currently before the Court.

[2] See Meece v. Commonwealth, 529 S.W.3d 281 (Ky. 2017).

Six days later, the Commonwealth filed the petition for a writ of prohibition that is the subject of this case, arguing that the trial court was acting erroneously in authorizing the use of public funds. Specifically, the Commonwealth argues that Judge Grise abused his discretion in holding the entire public-funds request hearing ex parte and that he instead should have allowed the Commonwealth to appear at the hearing and contest whether the private experts are "reasonably necessary" for a full presentation of Meece's RCr 11.42 claims. In addition, the Commonwealth contends that the public-funds request hearing was held prematurely because Judge Grise failed first to determine that the specific RCr 11.42 claims for which Meece requested the assistance of experts were sufficient to necessitate an evidentiary hearing.

## II.    ANALYSIS.

First, we must determine whether the Commonwealth has met the minimum threshold showing of harm and lack of redressability on appeal to warrant writ relief. Because we find that the Commonwealth has met this requirement, we must then determine whether the trial court abused its discretion in conducting the entirety of the private-expert request hearing ex parte. We find no error and accordingly deny the Commonwealth's writ of prohibition.

### A. A writ of prohibition is an appropriate remedy to seek relief in this case.

The Commonwealth petitions this Court for a writ of prohibition seeking to prevent enforcement of Judge Grise's order for the use of public funds

3

because the Judge acted erroneously in issuing the order. Such a writ is the proper avenue for relief in this case.[3]

A writ of prohibition "is an 'extraordinary remedy' that Kentucky courts 'have always been cautious and conservative both in entertaining petitions for and in granting such relief.'"[4] Courts typically "divide[] writ cases into 'two classes,' which are distinguished by 'whether the inferior court allegedly is (1) acting without jurisdiction (which includes beyond its jurisdiction), or (2) acting erroneously within its jurisdiction.'"[5]

"Under this second class of cases, a writ 'may be granted upon a showing that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.'"[6]

In ordering the use of public funds for Meece's private experts, the trial court was acting within its jurisdiction. The Commonwealth's only avenue for writ relief is upon a claim that, in ordering the use of public funds, the trial court acted erroneously in a way that would cause the Commonwealth to suffer great and irreparable injury for which an appeal would not be an adequate remedy.

---

[3] This Court has previously allowed a writ of prohibition to be used in this manner. *See Commonwealth v. Paisley*, 201 S.W.3d 34 (Ky. 2006) (granting relief through a writ of prohibition to prevent enforcement of a judge's order to disburse public funds to pay for an indigent defendant's expert witnesses because the judge failed to make the requisite findings before issuing the order).

[4] *Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750, 754 (Ky. 2005) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)).

[5] *Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750, 754 (Ky. 2005) (quoting *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2010)).

[6] *Newell Enterprises*, 158 S.W.3d at 754. (quoting *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2010)).

4

Before addressing the alleged error of the trial court, we note that the Commonwealth has demonstrated the minimum threshold showing of harm and lack of redressability on appeal. In *Commonwealth v. Paisley*, this Court granted the Commonwealth's writ of prohibition seeking to prevent enforcement of a circuit court order allowing public funds to be disbursed under KRS 31.185.[7] We determined that the Commonwealth had met the minimum threshold requirement because it "would be unable to recoup the funds once they are expended, thereby satisfying the inadequate remedy requirement," and, because the facts were capable of frequent repetition, the Commonwealth would "suffer irreparable injury in the form of massive payouts of funds to indigent defendants seeking private expert opinions."[8]

For these same reasons, we conclude that the Commonwealth has met the minimum threshold showing of harm and lack of redressability on appeal. We must now determine whether the circuit court is acting erroneously by ordering the disbursement of public funds.

### B. The circuit court did not err in holding an ex parte hearing to determine whether Meece was entitled to state funds for the procurement of private expert testimony.

The Commonwealth first argues that Judge Grise is acting erroneously because he failed to allow the Commonwealth to participate in Meece's request for post-conviction public funds under KRS 31.185. That statute, in relevant part, provides the following:

> (1) Any defending attorney operating under the provisions of this chapter is entitled to use the same state facilities for the evaluation of evidence as are available to the attorney representing the

---

[7] 201 S.W.3d 34, 37 (2006).

[8] *Id.*

5

Commonwealth. If he or she considers their use impractical, the court of competent jurisdiction in which the case is pending may authorize the use of private facilities to be paid for on court order from the special account of the Finance and Administration Cabinet.

(2) The defending attorney may request to be heard ex parte and on the record with regard to using private facilities under subsection (1) of this section. If the defending attorney so requests, the court shall conduct the hearing ex parte and on the record.[9]

The Commonwealth concedes that, when read together, subsections (1) and (2) entitle an indigent post-conviction petitioner to an ex parte hearing to determine whether he may use a private expert witness because the use of state facilities is "impractical." But the Commonwealth argues that the trial court must first determine, in a public hearing and with the Commonwealth's participation, whether the use of the requested private expert is "reasonably necessary for a full presentation of the petitioner's case." Thus, the Commonwealth argues, Judge Grise abused his discretion in ruling on Meece's request for private experts without first allowing the Commonwealth to contest whether the use of private experts was "reasonably necessary."

Before addressing the issue of whether the "reasonably necessary" determination must occur ex parte, we first find it necessary to clarify the state of the law with respect to KRS 31.185 in the post-conviction context. Specifically, we point out that this Court has never expressly held that ex parte hearings under KRS 31.185(2) are afforded to post-conviction petitioners, despite having held that a post-conviction petitioner may be entitled to public funds under KRS 31.185(1). Because we think our case law and the purpose of

---

[9] KRS 31.185(1)–(2).

the statute requires it, we hold now that KRS 31.185(2) applies to post-conviction petitioners.

In *Stopher v. Conliffe*, this Court first addressed the applicability of KRS 31.185 to post-conviction petitioners.[10] There, "[w]e focused upon the 'defending attorney' language in subsections (1) and (2) . . . and held that the language evidenced the General Assembly's intent 'to limit the use of funds or facilities allowed under KRS 31.185 to attorneys representing an indigent defendant *at trial*.'"[11] We then "flatly declared that 'KRS 31.185 [in its entirety] does not apply to post-conviction proceedings.'"[12]

Shortly thereafter, however, this Court decided *Paisley*[13] and appeared to take a different position. In that case, we reviewed a trial court's order granting a post-conviction petitioner's request for public funds to pay for a private expert.[14] In so doing, we relied on KRS 31.185(1), despite its "defending attorney" language, for the proposition that a post-conviction petitioner may be entitled to public funds for the hiring of an expert witness if the post-conviction petitioner could show that the use of state facilities was impractical.[15] We held that the trial court had abused its discretion because it failed to make the

---

[10] 170 S.W.3d 307, 308 (Ky. 2005).

[11] *Hodge v. Coleman*, 244 S.W.3d 102, 107 (Ky. 2008) (quoting *Stopher*, 170 S.W.3d at 308).

[12] *Hodge*, 244 S.W.3d at 107 (quoting *Stopher*, 170 S.W.3d at 308).

[13] 201 S.W.3d at 34.

[14] *Id.* at 35–36.

[15] *Id.* at 36.

7

"impractical" determination before granting the petitioner's request. We did so without discussing *Stopher*.[16]

Then, in *Hodge v. Coleman*, we reconciled the two cases by explaining that *Stopher* involved an expert witness request by a post-conviction petitioner *before* a court of competent jurisdiction had determined that the underlying RCr 11.42 claim had set forth allegations sufficient to warrant an evidentiary hearing. "In *Paisley*, however, the trial court had already determined that the petitioner's RCr 11.42 motion could not be resolved without an evidentiary hearing."[17] Read together, we explained, the two cases "jointly hold that an indigent post-conviction petitioner may not receive public funds under KRS 31.185 unless a court of competent jurisdiction, whether at the trial or appellate level, has determined that the post-conviction petition sets forth allegations sufficient to necessitate an evidentiary hearing."[18] Thus, we explained, "to the extent that *Stopher* holds that KRS 31.185 is never available as an avenue for indigent post-conviction petitioners to obtain public funds, *Stopher* is overruled."[19]

While *Hodge* involved a request for public funds to pay travel expenses for out-of-county witnesses, and not a request for a private expert witness, the case still left *Paisley* entirely intact. So a fair reading of *Hodge* suggests that KRS 31.185(1), despite the "defending attorney" language, applies in the context of post-conviction petitioners, provided that the trial judge first

---

16 *Id.*

17 *Hodge*, 244 S.W.3d at 107.

18 *Id.* at 108.

19 *Id.*

8

determines that the petition sets forth allegations sufficient to necessitate an evidentiary hearing. While it is not clear whether *Hodge* overruled *Stopher* to the extent that both subsection (1) and (2) would now apply to post-conviction petitioners, we now clearly state that it does. Therefore, the ex parte hearing afforded in subsection (2) applies in this context. It would seem nonsensical to allow a criminally accused person access public funds established in KRS 31.185, subject to the "impractical" requirement in subsection (1), but to not afford them the ex parte hearing in subsection (2) to make his request. We simply do not think this was intended by the *Hodge* court.

To hold otherwise would also conflict with the purpose of KRS 31.185. The purpose of that statute is to ensure that indigent criminal defendants are placed on equal footing with non-indigent defendants, who are not required to go through an adversarial hearing to determine if they can hire an expert witness to help present their case. This is evidenced by the fact that the statute is included in KRS Chapter 31, which established the Department of Public Advocacy in an effort to ensure fair representation of indigent persons who are criminally accused.[20] By requiring indigent petitioners to defend, in an adversarial proceeding against the Commonwealth, their requests for the use of private experts, while not requiring the same of non-indigent petitioners, this Court would be going directly against the purpose of KRS 31.185.

Further, this result is consistent with this Court's view that the trial court bears the responsibility to guard against unnecessary and unjustifiable

---

[20] *See* KRS 31.010 (establishing the "Department of Public Advocacy, in order to provide for the establishment, maintenance, and operation of a state-sponsored and controlled system for . . . [t]he representation of indigent persons accused of crimes or mental states which may result in their incarceration or confinement . . . ").

expenditure of public money in the context of expert witness requests under KRS 31.185. In *Hodge*, for example, we explained that "the trial courts in the Commonwealth have the inherent authority to control the proceedings before them to eliminate unjustifiable expense and delay."[21] We specified that "[t]his inherent authority includes discretion to examine the post-conviction petition and the list of proposed witnesses . . . to determine what is reasonably necessary for those petitioners to fully present their claims."[22] While the Commonwealth may play this role in certain contexts,[23] that cannot be true here because the legislature has expressly provided for the authorization of public funds without the Commonwealth's participation.

Therefore, because both the purpose of KRS 31.185 and our case law construing the statute in the post-conviction context require it, we now hold that KRS 31.185(2) applies to post-conviction petitioners and makes available to them an ex parte hearing to determine whether they are entitled to public funds for the procurement of private expert witnesses.

Thus, we now turn to the Commonwealth's main argument: the determination of whether an expert witness is "reasonably necessary for a full presentation of the petitioner's case" is not subject to the ex parte requirement under KRS 31.185(2). We disagree with the Commonwealth and hold that both the "reasonably necessary" determination and the "impractical use" determination are subject to the ex parte requirement in subsection (2).

---

[21] 244 S.W.3d at 108.

[22] *Id.*

[23] The Commonwealth cites to *Commonwealth v. Cambron*, 546 S.W.3d 556, 566 (Ky. App. 2018) to support its position that it is "the Commonwealth's role in the criminal justice system to protect against public funds being wasted."

In *Mills v. Messer*, this Court first explained that an indigent post-conviction petitioner "may be entitled to state funds for the procurement of expert testimony upon a showing that such witness is reasonably necessary for a full presentation of the petitioner's case."[24] Shortly thereafter, this Court clarified in *White v. Payne* that the "reasonably necessary" standard must be "applied in conjunction" with KRS 31.185(1)'s "impractical use" standard.[25] So, to authorize the use of public funds for the procurement of a private-expert witness, "the trial court must determine whether the [state expert facilities] are impractical *and* whether a private expert is reasonably necessary."[26]

As previously discussed, KRS 31.185(2) mandates that the determination of whether private facilities will be authorized must occur ex parte if the petitioner so requests. The question of whether this hearing includes the "reasonably necessary" determination is a matter of statutory interpretation. In so doing, "[w]e have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion."[27] Accordingly, we must first look to the text of the statute, and "if the language is clear, our inquiry ends."[28]

---

[24] 268 S.W.3d 366 (Ky. 2008) (emphasis added).

[25] 332 S.W.3d 45, 49 (Ky. 2010).

[26] *White v. Commonwealth*, 500 S.W.3d 208, 212 (Ky. 2016) (emphasis in original).

[27] *Cosby v. Commonwealth*, 147 S.W.3d 56, 59 (Ky. 2004).

[28] *University of Louisville v. Rothstein*, 532 S.W.3d 644, 649 (Ky. 2017). We have long recognized that "[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (quoting Ronald Benton Brown 8B Sharon Jacobs Brown, Statutory Interpretation: The Search for Legislative Intent § 4.2, at 38 (NITA 2002)).

The plain wording of KRS 31.185 suggests that the entire determination of whether an indigent petitioner is entitled to state funds for the procurement of private experts—including both the "reasonably necessary" and "impractical" determinations—may be conducted ex parte if the petitioner so requests. Subsection two provides that the petitioner "may request to be heard on the record with regard to using private facilities under subsection (1). . . ." While subsection (1) provides that the trial court may authorize the use of private experts only if the defending attorney considers the use of state facilities impractical, it is clear from the broad language in subsection (2) that the ex parte hearing is not limited to this determination alone. Rather, we believe the reference in subsection (2) "with regard to using private facilities," manifests the legislature's intent that the entire request for the use of private facilities be heard ex parte.

The Commonwealth argues that the "reasonably necessary" issue may not be heard outside its presence because the trial court is not "expressly authorized by law" to do so. To support this position, the Commonwealth cites to Supreme Court Rule (SCR) 4.300, Canon 2.9(A)(5), which provides that "[a] judge may initiate, permit, or consider any ex parte communication when expressly authorized by law to do so." The Commonwealth argues that because the determination of whether the petitioner's private expert is "reasonably necessary" is not specifically designated in the statute as being an issue that may be heard ex parte, and is instead a judge-made requirement, Judge Grise is not "expressly authorized by law" to make that determination without the Commonwealth's input.

12

We disagree. As previously noted, the "reasonably necessary" determination is included within the determination of whether the indigent petitioner is entitled to "use[] private facilities" under KRS 31.185. So, while the statute does not specifically state that the "reasonably necessary" issue is one that may be heard ex parte, it certainly provides the trial court with the necessary authorization required by SCR 4.300 by allowing the entire determination to be heard ex parte.

The Commonwealth also argues that because a trial court's determination to grant public funds under KRS 31.185 is reviewed for an abuse of discretion, it must be permitted to participate in the public-funds request hearing in order "to determine whether to contest any [subsequent] order or on what grounds to do so." While it is true that these orders are reviewed for an abuse of discretion, nothing would stop the Commonwealth from challenging those orders claiming the trial court failed to make the requisite findings—the "reasonably necessary" finding, for example—in issuing the order.[29] In fact, the Commonwealth has previously been successful in challenging public-funding orders on these grounds.[30]

---

[29] In his Response to Petition for Writ of Prohibition, Meece argues that that the Commonwealth lacks standing to contest a trial court order authorizing the use of public funds for the procurement of an indigent petitioner's private expert. We note that this Court has previously assumed that the Commonwealth has standing in these issues but has not definitively ruled on this issue. *See, e.g., Paisley*, 201 S.W.3d at 37 (granting the Commonwealth's writ of prohibition without discussing the issue of standing). We again indulge this assumption for the sake of determining the scope of ex parte hearings under KRS 31.185.

[30] *See Paisley*, 201 S.W.3d at 34 (Ky. 2006) (granting the Commonwealth's writ to prohibit a trial judge's order granting an indigent petitioner's request for public funds because the judge failed to make the "requisite showing the use of state facilities was somehow impractical . . .").

13

The Commonwealth also argues that the type of information needed to resolve "the 'reasonably necessary' issue is the type of expert witness sought, a rough sketch of the areas to be explored, and the specific RCr 11.42 claim the witness's opinion would support." These disclosures, the Commonwealth argues, would not "require an indigent inmate to disclose to the Commonwealth what it should not disclose." Even further, the Commonwealth argues, the need for complete secrecy regarding this type of information is rendered non-existent because the movant in an RCr 11.42 post-conviction proceeding is required "to state specifically the grounds in which the sentence is being challenged."[31] Because the experts will be retained for the purpose of supporting "already raised and identified claims," the Commonwealth argues, there is no need for this information to remain secret.

We disagree. As previously discussed, the purpose of KRS 31.185 is not simply to provide an indigent defendant with "total secrecy" in requesting public funds for expert witnesses. Instead, the purpose is to situate equally the indigent and the non-indigent criminal defendants in presenting their case, whether before or after a conviction. While complete secrecy may not be required in the context of an RCr 11.42 motion, requiring indigent petitioners to prove in an adversarial proceeding that their request for a private expert is "reasonably necessary," while not imposing the same requirement on non-indigent petitioners, would undoubtedly frustrate this purpose.

In sum, the plain language and purpose of KRS 31.185, combined with our case law, makes clear the ex parte hearing afforded to indigent criminal

---

[31] RCr 11.42(2).

14

defendants in KRS 31.185(2) also applies to post-conviction petitioners in the context of RCr 11.42 motions. Further, the petitioner's right to request an ex parte hearing under that statute applies to both the trial court's determination of whether the use of state facilities would be "impractical" under KRS 31.185(1) *and* whether the use of a private expert witness is "reasonably necessary" for a full presentation of the petitioner's case. Accordingly, we find that Judge Grise did not abuse his discretion in conducting ex parte the entirety of Meece's private-expert funding request.

### C. The circuit court's hearing to determine whether Meece was entitled to public funds for the procurement of private experts was not premature.

The Commonwealth also argues that the circuit court erred in conducting the ex parte hearing because it failed first to rule that the claims for which the expert witnesses were requested warranted an evidentiary hearing.

In *Hodge,* this Court explained that the "threshold requirement for an indigent post-conviction petitioner to receive funds under KRS 31.185 is for a court of competent jurisdiction to order that a hearing be held on the allegations contained in the petition."[32] The Commonwealth acknowledges that the trial court had previously scheduled for February of the following year an evidentiary hearing concerning Meece's RCr 11.42 claims. Nevertheless, the Commonwealth argues that the trial court erred in scheduling the expert-witness hearing because "the order setting [the evidentiary] hearing does not identify any claims that require [an expert witness] hearing or that will be the subject of the upcoming [evidentiary] hearing." Without specifying which claims

---

[32] *Hodge,* 244 S.W.3d at 108.

were to be heard at the evidentiary hearing, the Commonwealth argues, the expert-witness hearing could result in "the distribution of public funds for an expert witness for a claim that is later determined to be refuted by the record."

We disagree. *Hodge* requires that the trial judge first order that an evidentiary hearing be held on the allegations contained in the post-conviction petition before authorizing public funds under KRS 31.185. Judge Grise did exactly that. While the order setting a date for an evidentiary hearing does not specifically enumerate the claims to be heard, the trial court had not determined that any of Meece's claims did not have sufficient merit to require a hearing. It is clear the trial court satisfied the threshold requirement that a hearing be set with respect to any claims for which Meece had requested private experts. Accordingly, we hold that the minimum requirement set forth in *Hodge* has been met and the trial court did not abuse its discretion in holding an ex parte hearing to consider the use of public funds for Meece's private experts.

### III. CONCLUSION.

In sum, because the determination of whether Meece's requested private experts was reasonably necessary for the full presentation of his case may be heard ex parte, and because the trial court first determined that the Meece's post-conviction petition set forth allegations sufficient to necessitate an evidentiary hearing, we hold that the trial court did not abuse its discretion in conducting an ex parte hearing and granting Meece's request for the use of state funds for the procurement of private experts. Accordingly, we deny the Commonwealth's petition for a writ of prohibition.

16

The Commonwealth's Emergency Motion for Immediate Relief, in which it sought to prevent disbursement of public funds under Judge Grise's order, is hereby dismissed as moot.

IT IS SO ORDERED.

All sitting. All concur.

ENTERED this 1st day of November 2018.

_____
CHIEF JUSTICE

17