Fred M. JONES, Jr., Appellant

v.

Hon. Robert COSTANZO (Bell Circuit Court Judge), et al., Appellees.

No. 2012–SC–000054–MR.

Supreme Court of Kentucky.

Oct. 25, 2012.

Katherine Marie Dittmeier Holm, Department of Public Advocacy, La Grange, KY, Counsel for Appellant.

Robert V. Costanzo, Bell Circuit Court, Farmer Helton Judicial Center, Pineville, KY, Counsel for Appellee, Hon. Robert Costanzo, Bell Circuit Court Judge.

Jack Conway, Attorney General of Kentucky, Karen Greene Blondell, Middlesboro, KY, Heather Michelle Fryman, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee, Commonwealth of Kentucky, Real Party in Interest.

Opinion of the Court by Justice SCOTT.

Appellant, Fred M. Jones, Jr., petitioned the Court of Appeals for a writ of mandamus directing the Bell Circuit Court to enter an order releasing expert witness funds for an evidentiary hearing regarding his post-conviction RCr 11.42 ineffective assistance of counsel motion. The Court of Appeals denied the petition and Appellant now appeals to this Court as a matter of right, Ky. Const. § 115, CR 76.36(7)(a), arguing that an expert is necessary to prove that prejudice resulted from his trial counsel's failure to have him evaluated for competency. For the reasons that follow, we affirm the Court of Appeals' order.

## I. BACKGROUND

On May 22, 2009, Appellant was arrested for allegedly selling one Oxycontin pill to a confidential informant for $100. A Bell County Grand Jury subsequently indicted him for first-degree trafficking in a controlled substance, second or greater offense; failure to comply with sex offender registration; and for being a second-degree persistent felony offender. Appellant pled guilty to all of the charges and was sentenced to ten years in prison.

Prior to Appellant's guilty plea, Meggan Smith of the Department of Public Advocacy's (DPA) Post–Conviction Branch emailed Appellant's trial counsel, DPA's Michael Ingram. Smith's email indicated that she had previously represented Appellant who was evaluated for mental retardation by Dr. Eric Drogin and found to have an IQ of 56 (although Appellant was actually found to have a Full Scale IQ of 54). In the email, Smith offered to provide Ingram with a copy of Appellant's evaluation. Smith also left several phone messages for Ingram requesting that he call her to discuss Appellant's case. Ingram never responded to Smith and apparently never obtained a copy of Dr. Drogin's report.[1]

Dr. Drogin's report includes a detailed analysis of Appellant's cognitive and intellectual skills, which appear to be severely impaired. For example, Dr. Drogin reported that Appellant has the oral vocabulary of a five-year-old child. The report also includes a summary of records from a psychologist who had previously treated Appellant while he was incarcerated on unrelated charges. Upon his initial meeting with Appellant, the psychologist noted that Appellant "has lifelong anxiety problems, a severe speech impediment, probable significant cognitive limits (maybe MR [mental retardation]). He chews constantly on his finger [and] impresses one as a 2[-year-]old . . . ."

After a follow-up visit with Appellant, the psychologist noted that Appellant is a "very odd male who constantly sucks or chews on his hand. . . . It is really difficult to imagine how he functions on this yard. He is illiterate, looks and acts MR, with significant speech defects." One month later, the psychologist noted that he had "received multiple referrals and concerns regarding [Appellant's] ability to make it on this yard. He is pathetic. He is obviously limited intellectually, self-help skills are limited, he cannot seem to comprehend a write-up recently received, and he is highly vulnerable to exploitation."

While Appellant was incarcerated at Green River Correctional Complex, Sergeant Lori Humphreys reported the following:

gin's report; however, the report was not in the file that Ingram provided to DPA's Post–Conviction Branch.

---

1. According to Appellant, a Resident Legal Aide who was assisting Appellant at a correctional facility after he was initially arrested on these charges sent Ingram a copy of Dr. Dro-

During an investigation of write-up on [Appellant], he had difficulty answering my questions and he could not focus on the investigation, i.e., looking away and up, forgetting why he was in the office, [Appellant] was answering questions with one word that was unrelated to questions, [example:] "Are you on medication?" Answer: "Bob...." [Appellant] does not understand due process and is not suited for this institution. Obviously [Appellant] is mentally retarded. [Appellant] *should not* be in General Population.

Additional evidence of Appellant's limited intellectual abilities is reflected in Appellant's school records (he dropped out of school in the 9th grade, just prior to his eighteenth birthday) and Dr. Drogin's interviews with Appellant. For example, Appellant incorrectly stated his age, birth date, and level of education to Dr. Drogin.

Ingram never investigated Appellant's limited mental capacity or its implications for his competency or criminal responsibility. The trial court granted Appellant's motion for a post-conviction evidentiary

hearing on Appellant's claim of ineffective assistance of counsel for failure to have him evaluated for competency.[2] However, the trial court denied his motion for expert funds, requested pursuant to KRS 31.185,[3] to have a psychologist evaluate him and testify regarding his competency.

Appellant filed a petition for writ of mandamus asking the Court of Appeals to direct the trial judge, Bell Circuit Court Judge Robert Costanzo, to order the release of expert funds for the evidentiary hearing. The Court of Appeals denied the petition by Order entered January 12, 2012. This appeal followed.

Additional facts will be provided where helpful to our analysis.

## II. ANALYSIS

The standards for granting petitions for writs of prohibition and mandamus are the same. *Mahoney v. McDonald–Burkman,* 320 S.W.3d 75, 77 n. 2 (Ky.2010) (*citing Martin v. Admin. Office of Courts,* 107 S.W.3d 212, 214 (Ky.2003)).

---

2. Appellant's RCr 11.42 motion also requested an evidentiary hearing for trial counsel's failure to have him evaluated for criminal responsibility, but that hearing was denied. Appellant's brief indicates that he will address the trial court's denial of a hearing on that claim in an appeal from his RCr 11.42 motion if necessary. However, the denial of a hearing on that claim is not at issue in this appeal.

3. KRS 31.185 provides, in pertinent part:
(1) Any defending attorney operating under the provisions of this chapter is entitled to use the same state facilities for the evaluation of evidence as are available to the attorney representing the Commonwealth. If he or she considers their use impractical, the court concerned may authorize the use of private facilities to be paid for on court order from the special account of the Finance and Administration Cabinet.
....
(3) Any direct expense, including the cost of a transcript or bystander's bill of excep-

tions or other substitute for a transcript that is necessarily incurred in representing a needy person under this chapter, is a charge against the county, urban-county, charter county, or consolidated local government on behalf of which the service is performed and shall be paid from the special account established in subsection (4) of this section and in accordance with procedures provided in subsection (5) of this section....
....
(6) Expenses incurred in the representation of needy persons confined in a state correctional institution shall be paid from the special account established in subsection (4) of this section and in accordance with the procedures provided in subsection (5) of this section.
Pursuant to subsection (1), Appellant alleges that use of a state facility is impractical.

This Court set forth that standard in *Hoskins v. Maricle:*

> A writ . . . *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and *there exists no adequate remedy by appeal* or otherwise and great injustice and irreparable injury will result if the petition is not granted.

150 S.W.3d 1, 10 (Ky.2004) (emphasis added). Appellant invokes the second class of writ cases, alleging that the trial court acted erroneously but within its jurisdiction. Accordingly, he is required to satisfy the threshold inquiry of establishing (1) lack of adequate remedy by appeal or otherwise, and (2) that great injustice and irreparable injury will result if his petition is not granted. *Id.*

However, with respect to the second class of writ cases, we have held that the second prong of this inquiry may be satisfied by a different showing. To wit:

> [I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury.

*Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky. 1961). Appellant alleges that his case is one of these "certain special cases" in which a writ may issue without a showing of great injustice and irreparable injury by instead showing "a substantial miscarriage of justice will result," *and* "correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Id.* Proving it, however, is not an easy task.

■ In *Kentucky Employers Mutual Insurance v. Coleman,* we reiterated the long-standing, lofty standards which must be attained before a writ will be granted:

> [T]he writs of prohibition and mandamus are extraordinary in nature, and the courts of this Commonwealth "have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Bender v. Eaton,* 343 S.W.2d 799, 800 (Ky.1961).

> This careful approach is necessary to prevent short-circuiting normal appeal procedure and to limit so far as possible interference with the proper and efficient operation of our circuit and other courts. If this avenue of relief were open to all who considered themselves aggrieved by an interlocutory court order, we would face an impossible burden of nonappellate matters.

*Id.* This policy is embodied in a simple statement from a recent case: "Extraordinary writs are disfavored. . . ." *Buckley v. Wilson,* 177 S.W.3d 778, 780 (Ky. 2005).

236 S.W.3d 9, 12 (Ky.2007). We review the Court of Appeals' denial of a petition for writ of mandamus for abuse of discretion. *See, e.g., Sowders v. Lewis,* 241 S.W.3d 319, 322 (Ky.2007) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky.2000) (*citing Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999)).

## A. Lack of Adequate Remedy by Appeal

Appellant argues, in a conclusory manner, that this Court has recognized that the denial of funds for witnesses pursuant to KRS 31.185 satisfies the standard necessary to grant a writ. He bases this argument on our opinion in *Hodge v. Coleman*, 244 S.W.3d 102 (Ky.2008). In *Hodge*, we granted a writ of mandamus under almost identical circumstances to this case; however, we did so without analysis of the first prong of the threshold inquiry—lack of adequate remedy by appeal or otherwise.

Thus, before analyzing this requirement, we must first address an apparent inconsistency among three cases that are nearly identical to the case before us. We will address them chronologically.

### 1. Hodge v. Coleman

In *Hodge*, two petitioners were convicted of murder and sentenced to death.[4] *Id.* at 104. They filed RCr 11.42 motions claiming ineffective assistance of counsel for failure to present mitigating evidence. *Id.* The trial court denied those motions, but, on appeal, we reversed and remanded with instructions to conduct an evidentiary hearing on those claims. *Id.* On remand, the trial court denied the petitioners' motion for funding to secure the attendance of out-of-state witnesses. *Id.* at 105. They petitioned this Court for a writ of mandamus, asking us to direct the trial court to release funds to secure the attendance of those witnesses. *Id.*

After determining that under KRS 31.185(3) and (6) public funds were available to indigent defendants in post-conviction RCr 11.42 hearings, *id.* at 109, thereby overruling *Stopher v. Conliffe*, 170 S.W.3d 307 (Ky.2005),[5] we addressed whether the petitioners had met the standard for issuance of a writ. *Id.* at 109. We held they had, opining:

> It appears clear to us that [the petitioners] have satisfied the standards necessary to the granting of a writ. *Stopher* and [*Commonwealth v.*] *Paisley* [, 201 S.W.3d 34 (Ky.2006) ] were writ cases. And a finding that [the petitioners] should merely raise these issues on a direct appeal seems an unreasonable burden on the proper administration of justice in that denying the writ would prevent [the petitioners] from presenting witnesses on their behalf at the post-conviction hearing that we have already ordered. In turn, [the petitioners] would likely then appeal, meaning that we would in that future appeal reverse the trial court's decision to deny funding, starting the process anew. Such needless delay is improper and unnecessary because both the Commonwealth and the petitioners herein are entitled to finality. Furthermore, the availability of funds for post-conviction petitioners is certainly a matter of great importance to the courts throughout the Commonwealth, a fact that is magnified in this case since we previously deemed [the petitioners] mitigation-related claim to involve a "potential violation of a constitutional right." Therefore, we find that

4. This Court has exclusive jurisdiction over "any matter affecting the imposition of the death sentence." *Skaggs v. Commonwealth*, 803 S.W.2d 573, 577 (Ky.1990). Accordingly, the two individuals in *Hodge* petitioned for a writ of mandamus directly to this Court; thus, they were petitioners before this Court. In the case at bar, Appellant originally petitioned for writ of mandamus to the Court of Appeals. He is now appealing that court's denial of his petition. Thus, he is an appellant before this Court.

5. In *Stopher*, this Court held that KRS 31.185 funds were not available in post-conviction proceedings. 170 S.W.3d at 309–10.

[the petitioners] have satisfied the prerequisites necessary to the granting of a writ.

*Id.* at 110.

Importantly, although we *identified* the requirement of establishing lack of an adequate remedy by appeal or otherwise before a writ may issue, *id.* at 109, we neither addressed *whether* the petitioners alleged this prong was satisfied, nor analyzed *how* the petitioners satisfied it. In fact, our discussion seems to indicate that the petitioners *did* have a remedy by appeal, but that concerns of judicial economy outweighed the prospect of taking their claims through the normal appeals process. *See id.* ("[A] finding that [the petitioners] should merely raise these issues on a direct appeal seems an unreasonable burden on the proper administration of justice"; "Such needless delay is improper and unnecessary because both the Commonwealth and the petitioners herein are entitled to finality."). Stated differently, our holding seems to suggest that judicial economy concerns rendered the petitioners' traditional appellate remedy *in*adequate.

On the other hand, we also recognize that our judicial economy discussion in *Hodge* employed terms primarily associated with the "certain special cases" analysis.[6] For example, we referenced how the appeals process would burden the "proper administration of justice." *Id.* This echoes the requirement in the certain special cases analysis of showing that "correction of the error is necessary and appropriate in the interest of orderly judicial administration." Indeed, *Hodge* has been interpreted as standing for the proposition that, in certain circumstances, a writ may issue

"without a showing of irreparable harm in the interest of judicial economy." *Mills v. Messer*, 254 S.W.3d 814 (Ky.2008).

## 2. *Mills v. Messer*

The relevant facts in *Mills* are almost identical to those in *Hodge;* it is another writ case that arose out of an RCr 11.42 motion after the petitioner was convicted of murder and sentenced to death. 254 S.W.3d at 815. The appellant's motion, alleging eighty-five claims of ineffective assistance of counsel, was overruled by the trial court. *Id.* On direct appeal, this Court remanded to the trial court for an evidentiary hearing on, among other things, the appellant's claims regarding ineffective assistance in presenting mitigating evidence during the penalty phase. *Id.* On remand, the appellant moved the trial court to execute a certificate stating that four witnesses were material and necessary for the evidentiary hearing, but the trial court denied the motion. *Id.* at 815–16. The appellant petitioned this Court for a writ of mandamus requiring the trial court to order the attendance of the witnesses. *Id.* at 816.

After articulating the writ standard developed in *Hoskins*, 150 S.W.3d at 10, we summarily concluded that *Hodge* demanded we grant the petition for writ of mandamus. Our analysis provides, in full:

> In *Hodge*, we granted a writ without a showing of irreparable harm in the interest of judicial economy: "[A] finding that [the petitioners] should merely raise these issues on a direct appeal seems an unreasonable burden on the proper administration of justice in that denying the writ would prevent [the petitioners] from presenting witnesses on

6. As previously mentioned, under this category of cases a showing of "irreparable injury" is unnecessary "provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Bender*, 343 S.W.2d at 801.

their behalf at the post-conviction hearing that we have already ordered." *Hodge,* 244 S.W.3d at 110. Based on the same rationale espoused in *Hodge,* we conclude that Petitioner has satisfied the prerequisites necessary to the granting of a writ.

254 S.W.3d at 816. Accordingly, *Mills* interpreted our holding in *Hodge* as standing for the proposition that judicial economy concerns may replace the requirement of showing irreparable injury (or its "certain special cases" substitute).[7]

However, as in *Hodge,* we recited the lack of adequate remedy by appeal requirement, but failed to mention that the petitioner alleged lack of adequate remedy by appeal, much less that (or *how*) he proved it. *See id.* Rather, *Hodge* and *Mills* seemingly combine the two prongs of the threshold inquiry and could be interpreted as standing for the proposition that this unique set of circumstances satisfies *both* prongs of the threshold inquiry at once.[8] Perhaps in response to this novel implication, the more recent case of *Fields v. Caudill,* No. 2011–SC–000252–OA (Ky. Aug. 25, 2011), may be seen as a retreat from *Hodge* and *Mills.*

### 3. *Fields v. Caudill*

In *Fields,* the petitioner was convicted of murder and sentenced to death. Slip op. at 1.[9] He filed a post-conviction RCr 11.42 motion claiming ineffective assistance of counsel stemming from trial counsel's failure to call expert witnesses to challenge parts of the Commonwealth's case. *Id.* He moved for an evidentiary hearing, which was granted, and separately moved for

expert witness funds pursuant to KRS 31.185, which was denied. *Id.* at 1–2. He then petitioned this Court for a writ of mandamus, asking us to direct the trial court to release the funds. *Id.* at 1.

Because of its relevance and importance to the resolution of the case before us—and because of the opinion's unavailability[10]—we reproduce the relevant part of our *Fields* analysis in its entirety:

Though Petitioner argues that the "great and irreparable injury" requirement should be set aside in this case under the "certain special cases" exception, he has not alleged or shown that he lacks an "adequate remedy by appeal or otherwise." But "[o]ur cases involving controversies in this second class, where it is alleged the lower court is acting or proceeding erroneously within its jurisdiction, have consistently (apparently without exception) required the petitioner to pass the first test; i.e., he must show he has no adequate remedy by appeal or otherwise." *Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky.1961); *see also Hoskins,* 150 S.W.3d at 9 ("But if the petition alleged only that the trial court was acting erroneously within its jurisdiction, a writ would issue *only if* it was shown that there was no adequate remedy by appeal *and* great injustice and irreparable harm would otherwise occur."). Or, as it has been put more plainly: "Lack of an adequate remedy by appeal is an absolute prerequisite to the issuance of a writ under this second category." *Independent Order of For-*

---

7. *See supra* note 6.

8. Indeed, that appears to be precisely what Appellant is alleging.

9. *Fields* is an unpublished opinion that is currently unavailable on Westlaw, Casemaker, or the Kentucky Court of Justice website;

it is, however, available from the Office of the Clerk of the Supreme Court of Kentucky. This Court's opinion from the direct appeal of the murder conviction is available at *Fields v. Commonwealth,* 274 S.W.3d 375 (Ky.2008).

10. *See supra* note 9.

*esters v. Chauvin,* 175 S.W.3d 610 (Ky. 2005).

Not only has Petitioner not alleged or proved that he lacks an adequate remedy by appeal, this Court is quite sure that an appeal is exactly the appropriate remedy for the errors alleged in this case. Whether a trial court errs by not ordering expert funding in an RCr 11.42 proceeding is a claim of legal error. If it is error, it can be corrected in due course by an appeal.

This seems such an obvious result that it is worth noting, once again, "that writ petitions should be reserved for extraordinary cases and are therefore discouraged." *Cox [v. Braden ]*, 266 S.W.3d [792,] 796 [ (Ky.2008) ] . . . .

Because the Petitioner has an adequate remedy by appeal, his petition for a writ of mandamus is DENIED.

Slip op. at 3–5 (some citations omitted). Our opinion in *Fields* makes no reference to *Hodge* or *Mills.*

### 4. Resolution of Hodge, Mills, and Fields

We are thus presented with three cases from this Court that are directly on point to the case at bar. Although *Hodge, Mills,* and *Fields* were capital cases in which this Court was the court of direct appeal, we find this difference to be insignificant to the issue before us. After all, we have found *no* authority, aside from the implications in *Hodge* and *Mills,* for the proposition that a petitioner for a writ of mandamus may sidestep the requirement of establishing lack of adequate remedy by appeal. Accordingly, we must determine whether *Hodge* and *Mills* carve out an exception where, when the evidence supporting a motion for expert witness funds pursuant to an RCr 11.42 evidentiary hearing is so overwhelming—i.e., the trial court clearly abused its discretion in denying the motion—that judicial economy concerns alone render the petitioner's traditional appellate remedy inadequate. We hold that *Hodge* and *Mills* do not stand for this proposition.

■ Although it has been stated *ad infinitum* in our writ jurisprudence, it bears repeating: "Lack of an adequate remedy by appeal is an absolute prerequisite to the issuance of a writ under this second category." *Chauvin,* 175 S.W.3d at 615. Although *Hodge* and *Mills* may be interpreted as carving out an *exception to* this rule, we interpret them as *consistent with* this rule. We must assume that the petitioners in those cases made a sufficient showing of lack of adequate remedy by appeal. Unfortunately, this Court did not include *how* they did so in its opinions. Given the unanimous authority from this Court holding that a writ petitioner must satisfy the lack of adequate remedy by appeal requirement, we must believe that the requirement was "silently" satisfied in *Hodge* and *Mills.* Accordingly, we hold that *Hodge* and *Mills* stand for the proposition that judicial economy concerns may, in certain circumstances, be sufficient to satisfy *only* the irreparable injury requirement (or its "certain special cases" substitute).

### 5. Application to the Case at Bar

■ In his briefs to this Court, Appellant never alleges a lack of adequate remedy by appeal. Instead, pointing to our analysis in *Hodge,* he summarily argues that the denial of funds for witnesses pursuant to KRS 31.185 satisfies the standard necessary to grant a writ. As previously discussed, we interpret *Hodge* as holding that judicial economy concerns may be sufficient to satisfy the "irreparable injury" (or its "certain special cases" substitute) requirement, but *not* the lack of adequate remedy by appeal requirement. Accordingly, Appellant was required to allege and

make a showing of a lack of adequate remedy by appeal or otherwise, but he failed to do so. We decline any invitation to speculate as to how the petitioners in *Hodge* and *Mills* satisfied this requirement.

Instead, we seize this opportunity to repeat the language from our unpublished *Fields* opinion:

> Not only has the Petitioner not alleged or proved that he lacks an adequate remedy by appeal, this Court is quite sure that an appeal is exactly the appropriate remedy for the errors alleged in this case. Whether a trial court errs by not ordering expert funding in an RCr 11.42 proceeding is a claim of legal error. If it is error, it can be corrected in due course by an appeal.

No. 2011–SC–000252–OA, slip op. at 4.

**B. Great Injustice and Irreparable Injury**

Having determined that Appellant failed to establish the first prong of the threshold inquiry for issuance of a writ, we need not address whether Appellant's case satisfies the second prong under *Hodge* and *Mills*.

### III. CONCLUSION

We hold that Appellant failed to satisfy the threshold requirement of showing a lack of adequate remedy by appeal or otherwise necessary for issuance of a writ. The Court of Appeals therefore did not abuse its discretion, and we affirm its judgment.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. SCHRODER, J., not sitting.