

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00064-CR

_____

GARY SPINDLE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 5
Denton County, Texas
Trial Court No. F21-2767-462

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

## I. Introduction

After the trial court denied his motion to suppress, Appellant Gary Spindle pleaded guilty to his fourth Driving While Intoxicated (DWI) offense, a third-degree felony enhanced by a prior felony offense of possession of a controlled substance, and the trial court sentenced him to 15 years' confinement. *See* Tex. Penal Code Ann. §§ 12.42(a), 49.04, 49.09(b)(2). In a single issue, Spindle complains that the trial court erred by denying his motion to suppress. Because the trial court did not err, we affirm.

## II. Background

It was late afternoon in Eagle Point Marina's parking lot on July 27, 2019, when some women complained to Texas Parks and Wildlife Game Wardens Joshua Espinoza and Kyle Allison[1] about Spindle. Specifically, the women, who were in a white car, reported to the wardens that two men in a truck were following them and "making them nervous, and they were concerned about their safety."

The women pointed out to the wardens the silver truck that Spindle was driving as he drove past all of them. The truck's windows were down, and Warden Espinoza attempted to stop Spindle by flagging him down and calling out to him,

---

[1]State game wardens are peace officers with a primary focus on hunting, fishing, and boating law enforcement but have the authority to enforce any state law. Warden Allison had been a certified peace officer with Texas Parks and Wildlife for "just over ten years." Warden Espinoza had been a certified peace officer for eight years, of which he had been with Texas Parks and Wildlife for seven; he started his career with the Wichita County Sheriff's Office.

"State Game Warden, can I talk to you for a second?" Although the wardens were in uniform for their planned water safety patrol on Lake Lewisville, Spindle ignored them, sped up, and drove out of the parking lot towards Interstate 35.

Warden Espinoza followed the truck in his vehicle while Warden Allison asked the women some follow-up questions to make sure they were okay; he did not obtain their contact information.[2] Warden Allison secured his boat's equipment and then followed Warden Espinoza to provide back-up.

Spindle drove at a high rate of speed and kicked up dust or dirt as he passed a car. Warden Espinoza lost sight of the silver truck before he stopped Spindle around a mile away. During the stop, Warden Espinoza detected the odor of alcohol and conducted standardized field sobriety tests on Spindle before determining that Spindle was intoxicated.

In his motion to suppress, Spindle argued that the game wardens had violated his rights under the federal and state constitutions, complaining that he had been detained and arrested without lawful authority. The trial court denied the motion after a hearing.

### III. Discussion

In his single issue, Spindle argues that Warden Espinoza lacked articulable facts to establish the reasonable suspicion necessary to detain him when he "lost sight of

---

[2]Warden Allison stated during the suppression hearing that because the women's car had license plates, their information could have been captured on body camera.

the suspect vehicle then pulled [him] over without sufficient identifying vehicle information." He further asserts that the complainants "did not provide sufficient facts to [the wardens] that [he] had been involved in unusual activity related to a crime" because "[i]t is not suspicious to exit the marina using the only road available for ingress and egress" and because the complainants did not report any unusual, illegal, or dangerous driving behavior such as following too closely, weaving, almost hitting another vehicle, or speeding. And he points out that the wardens did not have any information to connect him with the alleged activity because they only briefly saw the suspect vehicle and did not log its license plate before losing sight of it.

The State responds that Warden Espinoza had the required reasonable suspicion to stop Spindle based on the totality of the circumstances because the two women had reported to the wardens that Spindle had put them in fear for their safety, and they had identified the truck he was driving; because Warden Espinoza had viewed the truck as its driver accelerated away when he initially approached it; and because Warden Espinoza was able to catch up to the same truck and conduct a traffic stop.

## A. Standard of review and applicable law

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex.

4

Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we infer the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

"An officer must have reasonable suspicion that some crime was, or is about to be, committed before he may make a traffic stop." *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. Crim. App. 2021). This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the

officer has an objective basis for the stop. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017). The facts adduced to give rise to a reasonable suspicion need not show that a person has committed, is committing, or is about to commit a particular and distinctively identifiable penal offense. *Derichsweiler v. State*, 348 S.W.3d 906, 916–17 (Tex. Crim. App. 2011).

Further, "circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Id.* at 914. The relevant inquiry is not whether particular conduct is innocent or criminal but the degree of suspicion that attaches to particular noncriminal acts. *Id.* The articulable facts must show (1) that some activity out of the ordinary has occurred; (2) that there is some suggestion to connect the detainee to the unusual activity; and (3) that there is some indication that the unusual activity is related to crime. *Id.* at 916. The information supporting reasonable suspicion must be sufficiently detailed and reliable to suggest that something of an apparently criminal nature is brewing and that it supports more than an inarticulate hunch or intuition. *Id.* at 917.

Whether the totality of circumstances supports reasonable suspicion is a legal determination we review de novo. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008). For example, in *Derichsweiler*, the DWI defendant's conduct—while not overtly criminal in any way—was "bizarre to say the least." 348 S.W.3d at 917. At around 8 p.m. on New Years Eve, the defendant had pulled up beside the

6

complainants' vehicle in a drive-thru and kept grinning at them and driving around them, making them feel threatened and intimidated by his peculiar conduct. *Id.* at 909. When the defendant left them and drove into a nearby Wal-Mart parking lot and did the same to others, they called 911 and reported his "suspicious behavior." *Id.* at 910. The police arrived, contacted the driver, and investigated him for DWI. *Id.* at 910–11.

In concluding that the police had reasonable suspicion for the stop, the Court of Criminal Appeals observed,

> It matter[ed] not that all of this conduct could be construed as innocent of itself; for purposes of a reasonable-suspicion analysis, it is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon.

*Id.* at 917. Under such circumstances, "the Fourth Amendment permits the police to make a brief stop to investigate, if only by their presence to avert an inchoate offense." *Id. But see Martinez v. State*, 348 S.W.3d 919, 926 (Tex. Crim. App. 2011) (reversing based on unknown reliability of anonymous 911 caller and lack of specific articulable facts suggesting that criminal activity was afoot when officer had a minimal and inaccurate description of the suspect vehicle, observed no suspicious behavior, and had a larger search area than the police had in *Derichsweiler*).

Reasonable suspicion does not require negating the possibility of innocent conduct. *Johnson*, 622 S.W.3d at 384–85. In *State v. Kerwick*, the Court of Criminal Appeals concluded that the arresting officer had reasonable suspicion despite the insufficiency of "each fact in isolation" to establish reasonable suspicion. 393 S.W.3d

270, 275 (Tex. Crim. App. 2013). In responding after midnight to a bar to investigate a report of fighting, the officer saw several people standing outside, and he spoke to someone with a damaged vehicle. *Id.* That person identified himself or herself to the officer, pointed at a vehicle parked on the roadway across the street from the bar and stated, "There they are right there." *Id.* As the officer approached the identified vehicle, Kerwick began to drive it away. *Id.*

The court determined that the officer had reasonable suspicion to investigate, noting,

> In light of the damaged vehicle and the presence of several people outside of the bar after a report of several people fighting, and the clear identification of Kerwick's vehicle, the [complainant's] statement provided a rational basis for Officer Bradford to infer that the person whose vehicle was damaged was a potential crime victim and was identifying the person or persons responsible for the damage.

*Id.* at 276. The officer's belief that he needed to investigate "was further supported by Kerwick's attempt to drive away as he approached," making it reasonable to infer that Kerwick was evading the officer either because Kerwick did not want to speak to him or because Kerwick and her passengers had been identified by a witness or potential crime victim at the scene. *Id.* "When police receive a call about an offense and, on arrival at the scene, someone shouts, 'There they are,' it would be unreasonable for an officer not to investigate further." *Id.*

And information in person from a citizen who is not connected with the police or a paid informant "is inherently trustworthy when he advises the police a crime is

being committed." *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd). "[U]nlike a person who makes an anonymous telephone call, a person presenting himself to the officer, and doing so while driving a car from which his identity might easily be traced, puts himself in a position to be held accountable for his intervention." *Id.*; *see Chambers v. State*, No. 2-06-359-CR, 2007 WL 3408628, at *2 (Tex. App.—Fort Worth Nov. 15, 2007, no pet.) (mem. op., not designated for publication) ("[A] person who is not connected with law enforcement or is not a paid informant is considered inherently trustworthy when advising the police that suspected criminal activity has occurred or is occurring.").

**B. Suppression hearing**

At the suppression hearing, the trial court admitted into evidence Warden Espinoza's body-camera footage, which showed the silver four-door Ford truck with "RAPTOR" written in large letters on its bed and its windows down. The footage also showed the warden's attempt to stop Spindle, the silver truck's driver; the women's white car; and the subsequent stop of the silver truck a mile or so away from the marina three minutes later. During his pursuit, Warden Espinoza lost eye contact with the silver truck and had not noted its license plate when the women pointed out the truck to him.

Both wardens testified at the suppression hearing that the women who had approached them about Spindle had been nervous and excited when they told them that the men in the silver truck had been following them and making them

9

uncomfortable and concerned for their safety. Warden Allison testified that this indicated to him that some criminal activity could be occurring because "[t]hat's something that we don't normally have people come talk to us about." Warden Espinoza concurred, testifying that the women's description of the driver's behavior, combined with their "overly excited" demeanor, indicated to him that some criminal activity could be afoot.

The testimony at the hearing reflected that from I-35, there was a single road leading into the area, with the marina to the right and Sneaky Pete's[3] to the left. The marina parking lot—off this road—was "one way in[;] one way out."

At the hearing's conclusion, Spindle's defense counsel argued that the wardens had lacked specific articulable facts to justify the stop because nothing had been relayed by the women about poor driving factors, following too closely, or what had alarmed them other than being followed in a location that had a single road in and out. He stated that because there was a single road into the area, "[I]f you're going to the same place as that person, you have to follow them to get into Sneaky Pete's. It's a one-drive in." He further argued that Warden Espinoza had lost eye contact with the truck and then initiated a traffic stop on Spindle "because [he was] in a vehicle that matches the description of the one he just saw."

---

[3]Sneaky Pete's is a restaurant. *See Gaskill v. Sneaky Enters., Inc.*, 997 S.W.2d 296, 297 (Tex. App.—Fort Worth 1999, pet. denied).

**C. Analysis**

Here, the wardens received a complaint from in-person witnesses about Spindle's driving, and the witnesses were in a vehicle with license plates, which would have allowed the police to identify them. *See Sailo*, 910 S.W.2d at 188; *see also Bilyeu v. State*, 136 S.W.3d 691, 696 (Tex. App.—Texarkana 2004, no pet.) (stating that a concerned citizen approaching officers in his vehicle "would have allowed the officers to identify him had they deemed it necessary" and that the in-person provision of information directly to the officers made the information "significantly more reliable than a simple anonymous telephone call"); *cf. Swaffar v. State*, 258 S.W.3d 254, 259–60 (Tex. App.—Fort Worth 2008, pet. ref'd) (reversing denial of suppression motion when there was insufficient reasonable suspicion for the stop: the anonymous caller did not remain on the scene after reporting a possible assault; did not provide her contact information; and did not provide a license plate number, make of car, or description of the people involved except for gender and number, and the officer did not observe any offenses).

The women's complaint to the game wardens did not focus on how Spindle was driving but rather on his behavior in following them, which made them uncomfortable to the point that they felt compelled to report him for their safety.

When the women pointed out Spindle's vehicle to the wardens and Warden Espinoza tried to stop him to investigate their allegations, Spindle drove away instead of stopping. *See Kerwick*, 393 S.W.3d at 276 (stating that while flight is not necessarily

11

indicative of wrongdoing, "it is certainly suggestive of such"). And he drove towards I-35 rather than to Sneaky Pete's or elsewhere in the marina area. The trial court could have reasonably concluded that Spindle's behavior—based on the women's report to the wardens and then Spindle's failure to stop after driving there, seeing the women's car parked near the game wardens, and being asked to stop by Warden Espinoza—gave rise to sufficient reasonable suspicion to pursue and briefly stop him to investigate. *See Karr v. State*, No. 02-20-00123-CR, 2021 WL 5227176, at *2 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op., not designated for publication) (explaining that when determining whether reasonable suspicion existed, "the court does not inquire whether conduct is innocent or guilty but considers instead 'the degree of suspicion that attaches to particular types of noncriminal acts'" (quoting *United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 1587 (1989)).

And the trial court had Warden Espinoza's body-camera footage showing Spindle's distinctive silver truck when he first refused to stop at the warden's command at the marina and then after Spindle stopped around a mile away—three minutes later—allowing the trial court to conclude that both vehicles were the same. Accordingly, we conclude that the trial court did not err by denying Spindle's motion to suppress, and we overrule his sole issue. *See Almon v. State*, No. 2-05-247-CR, 2006 WL 1452580, at *3 (Tex. App.—Fort Worth May 25, 2006, no pet.) (mem. op., not designated for publication) ("[T]he trial court was authorized to believe Officer Zenteno's testimony that appellant was the same driver that she had previously seen

12

commit the traffic violations [after she briefly lost sight of his vehicle], and we are bound by that implied finding.").

## IV. Conclusion

Having overruled Spindle's sole issue, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 2, 2025

13