RENDERED: APRIL 25, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0563-MR

TAIRA LITSEY                                         APPELLANT

|       | APPEAL FROM BULLITT CIRCUIT COURT |
|-------|-----------------------------------|
| v.    | HONORABLE RODNEY D. BURRESS, JUDGE |
|       | ACTION NO. 16-CR-00456            |

COMMONWEALTH OF KENTUCKY                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND L. JONES, JUDGES.

JONES, L., JUDGE: Appellant Taira Litsey (Litsey) brings this appeal from the March 24, 2023 Order of the Bullitt Circuit Court denying her motion to vacate her conviction and sentence pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42. Finding no error, we affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2017, Litsey was found guilty of one count of Assault in the First Degree, one count of Wanton Endangerment in the First Degree, one count of Fleeing or Evading Police in the First Degree, one count of Operating on a Suspended License in the First Degree, and being a Persistent Felony Offender (in the Second Degree) (PFO II). On May 31, 2017, following testimony and argument as to sentencing, Litsey was sentenced to serve fifteen years for Assault in the First Degree, five years for Wanton Endangerment in the First Degree, five years for Fleeing or Evading Police in the First Degree, and ninety days for Operating on a Suspended License. The PFO II finding enhanced the assault conviction to forty years and the wanton endangerment and fleeing or evading convictions to five years each. The trial court ran those sentences concurrently for a total sentence of forty years in the penitentiary.

Litsey appealed her conviction and sentence; both were affirmed by our Supreme Court in an unreported decision. *Litsey v. Commonwealth*, No. 2017-SC-000334-MR, 2019 WL 1167987 (Ky. Feb. 14, 2019). We adopt the following factual and procedural history from Litsey's direct appeal:

> While on regular patrol on July 3, 2016, Officer Besednjak ran the license plate of the vehicle traveling in front of him. His search revealed that the vehicle was registered to Taira Litsey, whose driver's license was suspended. Officer Besednjak initiated his emergency

lights and Litsey pulled into a gas station. Officer Besednjak alerted dispatch that he was making a traffic stop. After stopping his vehicle behind Litsey, Officer Besednjak approached the vehicle and asked Litsey for her identification and proof of insurance, but she had none. Shortly thereafter, two additional officers arrived on the scene. One of the other officers asked Litsey for her keys and when she complied, he placed the keys on the roof of Litsey's vehicle. After returning to his vehicle and performing a quick search, Officer Besednjak learned that Litsey had outstanding felony arrest warrants.

Officer Besednjak informed the other officers about the outstanding warrants, then walked back over to Litsey and asked her to step out of the vehicle. She claimed she needed to roll her windows up as she grabbed the keys from the roof. Despite Officer Besednjak repeatedly telling her to stop and exit her vehicle, she persisted. He reached in the vehicle attempting to get the keys from her, but she was able to get the keys in the ignition and start the vehicle. According to Officer Besednjak, the top half of his body was inside the vehicle, reaching across her lap trying to get the keys. Despite the officer being partially in her vehicle, Litsey took off at a high rate of speed, causing her tires to squeal. Officer Besednjak was initially dragged with the vehicle until he fell out and struck his upper back on a curb. He later testified that Litsey also ran over his left calf as she fled.

Officer Besednjak got up and went back to his vehicle while yelling at the other officers to pursue Litsey. He activated his lights and siren as he began the pursuit, with dark and rainy conditions making it very difficult to see her vehicle. The officers lost sight of Litsey's vehicle, and therefore were not able to catch her. Litsey and her passenger, Logan Lamb, drove at high speed for a few minutes before pulling over behind a

building.  At some point, Litsey turned her lights off.  Once she stopped the vehicle, she ran away on foot.

That night, Officer Besednjak began a long process of medical treatment for his injuries.  At trial, his neurosurgeon testified that he suffered a herniated cervical disc, which was surgically removed.  Additionally, Officer Besednjak testified that he continues to suffer significant pain and muscle weakness and must take medication day and night to deal with his pain.  He spends most of his days on the couch to avoid putting pressure on his neck and has no plans to return to work as a police officer.  He also testified that he was currently in the process of applying for retirement disability benefits and it is unlikely that he can return to full-duty work.

Lamb, Litsey's passenger during the incident, testified for the defense.  Lamb stated that he had known Litsey for about three months prior to the event and their relationship centered around drug use.  They were together every day and most every night during that time period and slept very little.  Lamb testified that Litsey used drugs multiple times a day and that they had both been awake for approximately three weeks straight at the time of the incident.

According to Lamb, while fleeing from the police, Litsey stated she was scared and did not want to go to jail.  Litsey admitted that when she was stopped by Officer Besednjak she knew she had outstanding arrest warrants.  Lamb estimated that she was driving approximately eighty miles per hour when she fled from police, but Litsey denied driving that fast.  Lamb was scared and asked her to stop the vehicle.

*Id.* at *1-2.  Any further facts relevant to the present appeal will be developed as needed.

-4-

Following the close of evidence, the trial court found Litsey guilty of the offenses discussed, *supra*, and explained orally its factual findings as to each element.[1] The trial court continued the matter for later presentation of aggravating and mitigating evidence prior to announcing sentence.

Sentencing occurred on May 31, 2024. At sentencing, the Commonwealth called Officer Besednjak and Lauren Vincent (Officer Besednjak's paramour) to testify as to the physical and mental effects the offenses had on Officer Besednjak. Litsey offered testimony from (1) her mother, Karen Litsey (Karen), (2) her daughter, Layla Litsey, (3) her stepmother, Rose Litsey, and (4) Litsey herself.

Following testimony and arguments of counsel, the trial court gave extensive comments on its sentencing decision and the reasoning therefore. Because those comments factor heavily into our decision, we relate those comments here:

> Well, the Court has had a considerable amount of time to consider the facts of the case, having sat through the trial on this matter. This particular case, I have received today, a substantial amount of evidence relating to allegations of mental issues involving the defense which was submitted in mitigation. The Court does note that no legal defense – criminal responsibility or guilty by reason of insanity or other mental defense – has been asserted. The Court also notes that I have not received any testimony today from any doctor or medical

---

[1] The trial court noted that neither party asked for specific factual findings.

professional as to the degree of any mental condition. Nor have I received any written verification in the form of exhibits.

What I am left with is testimony from the parties. What concerns me the most is the testimony from Karen Litsey when she said, "I cannot live with a psychotic drug addict."[2]

Now, in this particular case, I'm left with the possibility of life in prison as a defense [sic]. There's no question that this young lady has had an opportunity to conform her conduct to the requirements of the law. There's no question from the testimony that I've received that she has suffered from depression. But her remedy has been to ignore that. In fact, the testimony I received was the last time she was out, she was on her [medication for] two weeks and she quit taking those medications. Started using street drugs. On the date of the offense, she claims to have been under the influence of street drugs.

However, she was capable to develop the mental state to operate that motor vehicle to its location where the incident occurred. She was capable of developing the mental state necessary to effect an escape from the police officer by using the manual dexterity necessary to grab keys, insert them in the ignition, put the car into drive, and to take off. She was able to develop the mental state necessary to flee from the police, to hide behind a building here in Bullitt County and wait for the police to leave, and then to leave the vehicle on foot in an effort to escape.

The Court does note, that if there was ever a case that was made for a conviction for persistent felony

---

[2] At this comment, someone in the gallery started to make a comment. The trial court directed that person to leave the courtroom. While the trial court did not identify the person, the video record shows Karen Litsey getting up from the gallery to walk outside. The trial court resumed after Karen Litsey left.

offender, this is it. This Defendant has multiple convictions for assault, has a conviction in 2005 for Escape Second Degree, an Assault Third conviction in Warren County in 2006, Bail Jumping in 2007 in Warren County. She has multiple drug and substance related convictions, burglary convictions, theft convictions, receiving stolen property convictions, wanton endangerment convictions. In fact, in March of 2016, the PSI reflects that in Jefferson County, 16-CR-1455, she eventually ends up with a conviction in February where she is sentenced of this year, of Wanton Endangerment, First Degree. March was just three months prior to this incident. And the court system at that time gave her another chance by giving her supervised probation.

She has had multiple incidents – PSI reflects seven felony convictions. The PSI also reflects in 2004 she got a suspended sentence. 2005, she got shock probation. Violated the terms of that shock probation. 2007 in Warren County, she received a sentence of eight years but was paroled. And after having violated that parole, was returned to the institution, then paroled again in 2013. Put out on the streets, yet again. Then in 2016, she has a conviction in Oldham County, five years suspended and probated in addition to the Jefferson County case.

The Court is presented here with a criminogenic needs assessment by the division of probation and parole with a score of thirty-six. One of the highest scores I've seen for anyone in criminal cases in this division. And the record is replete with opportunity after opportunity after opportunity after opportunity after opportunity.

This time with no sufficient reason having been shown why judgment should not be pronounced and sentence imposed, the Court will adjudge the defendant guilty in Count I of the offense of Assault in the First Degree and fix her sentence at fifteen years in the penitentiary. Count II has previously been dismissed.

The Court will adjudge her guilty in Count III, Wanton Endangerment, First Degree [and] fix her sentence at 1 year in the penitentiary. The Court will adjudge her guilty in Count IV of Fleeing or Evading Police, First Degree and fix her sentence at five years. The Court will adjudge guilty in Count VI, Operating on a Suspended License [and] fix her sentence at ninety days.

The Court does adjudge her guilty in Count VII of being a Persistent Felony Offender in the Second Degree. [The Court] will enhance her sentence in Count IV for Fleeing or Evading to ten years in the penitentiary. [The Court] will enhance her sentence on [Wanton Endangerment, First Degree] to one year in the penitentiary. And I will note . . . I understand the Commonwealth's desire to seek a life sentence against [Litsey] in this case. I think there are sufficient mitigating factors that justify [a life sentence] not being imposed. But I am, having adjudged you guilty of being a Persistent Felony Offender in the Second Degree, [and] enhance your sentence on Assault 1 to forty years in the penitentiary.

I will order that all sentences be served concurrently. The Court will state for the record that it has considered the presentence investigation report prepared by the probation officer, giving due consideration to the nature and circumstances of the crime and the history, character, physical, and mental condition of the Defendant. [The sentence] is not eligible for probation because this is a violent offense, but the Court does believe that there is a substantial risk that the Defendant would commit another crime during any period of probation or conditional discharge. She is in need of correctional treatment that can be provided most effectively by her commitment to a correctional institute, and that probation or conditional discharge would unduly depreciate the seriousness, due to her prior criminal history, her drug addiction, her failure to previously benefit from supervision. The Sheriff of this County is

therefore ordered to deliver the Defendant to the custody
of the Corrections Cabinet for service of her forty-year
sentence in this case.

Video Record (VR) 5/31/17, 2:22:32 – 2:30:02.

On September 9, 2019, Litsey filed a *pro se* motion for relief under RCr 11.42 and supporting memorandum. In her *pro se* motion, Litsey asserted that her trial counsel provided ineffective assistance by: (1) failing to communicate with Litsey, regarding trial preparation and possible penalties; (2) failing to submit a motion to preserve evidence; (3) failing to employ an expert to testify about Litsey's mental health issues; (4) failing to file a motion for change of venue and instead recommending Litsey waive a jury trial; and (5) failing to withdraw when requested by Litsey. The trial court appointed appellate counsel to represent Litsey. That appointed counsel supplemented Litsey's original *pro se* motion, by fleshing out Litsey's claims involving her trial counsel: first for failing to investigate her mental health status and history to either present a defense at the guilt phase or to provide mitigating evidence at sentencing; and second for failing to request a change of venue and instead advising Litsey to waive her right to a jury trial.

The trial court held an evidentiary hearing on Litsey's motion on November 1, 2022. The hearing largely concerned (1) trial counsel's communication with Litsey; (2) trial counsel's failure to obtain mental health

expert testimony; (3) trial counsel's mitigation strategy; and (4) trial counsel's advice to request a bench trial rather than a jury trial. During the hearing, the Court heard testimony from four witnesses: Litsey's trial counsel; Dr. Eric Drogin; Ashley Litsey (Ashley); and Litsey herself.

Trial counsel testified she undertook representation of Litsey[3] with her main goal being to settle the case with a reasonable plea offer.[4] As to trial strategy, trial counsel testified she hoped to show Litsey's actions were not intentional but were "impulsive under the influence" of drugs. Counsel hoped Litsey would be convicted of only Assault in the Second Degree with a sentence "somewhere in the neighborhood of ten to fifteen years at 20% [time to serve before parole eligibility]."

Regarding preparation, trial counsel testified that she did not consult any medical health experts regarding Litsey's psychiatric background. Furthermore, trial counsel testified that she tried to get information about Litsey's

---

[3] Trial counsel testified largely from memory, as her file and notes from the case had been destroyed in a flood several years prior.

[4] While trial counsel could not independently remember any plea offers conveyed, it appears from the hearing that the Commonwealth may have made an offer of twenty years to serve prior to trial and twenty-five years to serve prior to sentencing. The details of such plea offers (the offenses to which Litsey would be expected to plead, how they would be served, and whether they would be violent offenses) were not developed during any testimony. Trial counsel testified that if she was presented with an offer, she couldn't see herself not conveying that to any defendant. In any event, Litsey did not complain that trial counsel failed to convey an offer in her original RCr 11.42 motion nor her supplemented motion and does not complain about such on appeal.

-10-

medical and psychiatric records from Karen, though Karen told trial counsel her daughter received most of her psychiatric treatment while incarcerated. Trial counsel testified she did not attempt to obtain such records through other means.

Trial counsel also testified that she met with Litsey three or four times in person, and spoke with her several times on the telephone.[5] Other testimony at the hearing indicated Michael McGlone, a friend of Litsey, would convey messages to trial counsel as well. Trial counsel also testified to reviewing "voluminous discovery" connected with the case, and said she spoke with Karen regarding possible mitigating evidence in the event of Litsey's conviction.

Regarding the decision to seek a bench trial rather than a jury trial, trial counsel testified she advised Litsey to request a bench trial because trial counsel felt Litsey could not get a fair trial with a jury due to media coverage and because the victim was a police officer. Rather than risk "evoking the sympathy of a jury," trial counsel believed that the trial court, sitting as the finder of fact would lead to a more "reasoned" result. Trial counsel further testified she neither filed a motion for change of venue, nor sought any affidavits in support of such a motion. Instead, trial counsel recalled a discussion with the Commonwealth and the trial court where she "tried to broach the subject," but was informed a change of venue "was not an option."

---

[5] Litsey was incarcerated from her arrest to sentencing.

Regarding mitigating testimony, trial counsel testified she called Karen hoping that, as the defendant's mother, she would provide sympathetic insight into Litsey's mental illness. Unfortunately the opposite occurred. Trial counsel testified that, in hindsight, she believed having a mental health professional testify at sentencing would have been of greater help.

Dr. Eric Drogin testified as an expert psychologist. Dr. Drogin interviewed Litsey and obtained her medical records. Dr. Drogin testified that Litsey has a dual diagnosis of bi-polar and polysubstance abuse disorders. Dr. Drogin testified Litsey had been prescribed Tegretol, Prozac, and Vistril, which are all used to treat serious mental illness. However, Dr. Drogin also testified that he could not opine how these diagnoses affected Litsey's actions on the night of the offense.

Ashley, Litsey's sister, testified to Litsey's chaotic upbringing (as well as her own), particularly at the hands of their mother, Karen. Ashley testified that she was not contacted by trial counsel but would have been more than willing to testify.

Litsey herself testified, first complaining of trial counsel's lack of communication,[6] which led to her utilizing her friend, Michael McGlone, as an

---

[6] Litsey testified that trial counsel only met her in jail once and Litsey did not recall speaking to trial counsel by telephone.

-12-

intermediary. Litsey testified she did inform trial counsel of her diagnoses and hospitalizations and asked if she "needed to be evaluated" to determine what, if any, effect her mental health conditions may have played in her actions. Litsey also testified she discussed a change of venue with trial counsel, but trial counsel did not file one.

Litsey also described in detail to her chaotic upbringing. When it came to witnesses who might offer evidence in mitigation of sentence, Litsey testified she advised trial counsel to call her daughter and her mother. When asked on cross-examination why she wanted her mother to testify in mitigation in light of her seemingly damaging testimony at trial, Litsey testified she did not believe her mother "intended to get up there to sabotage [her]."

On March 23, 2023, the trial court entered an order denying Litsey's RCr 11.42 motion. In particular, the trial court found (1) trial counsel had effectively communicated with Litsey in preparation of trial; (2) trial counsel did not provide ineffective assistance by choosing not to seek a change in venue or by recommending Litsey proceed with a bench trial; and (3) trial counsel did not provide ineffective assistance by not obtaining a mental health expert as Dr. Drogin was unable to conclude Litsey's psychiatric diagnoses had any effect on her conduct during the events of the offense. The trial court found Litsey suffered

-13-

no prejudice from the trial counsel's actions. From that order, Litsey filed a timely notice of appeal.

On appeal, Litsey argues that (1) her trial counsel was ineffective for failing to investigate and present mitigating evidence on her behalf at the penalty phase of her trial, and (2) her trial counsel was ineffective for failing to move for a change of venue and, instead, advising her to waive her right to a jury trial. We disagree.

## II.       STANDARD OF REVIEW

We review a trial court's decision concerning ineffective assistance of counsel under RCr 11.42 for abuse of discretion. *Jackson v. Commonwealth*, 567 S.W.3d 615, 619 (Ky. App. 2019). As explained in *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999), "[t]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

Ineffective assistance of counsel claims are analyzed under the two *Strickland*[7] factors. *Bowling v. Commonwealth*, 80 S.W.3d 405, 411-12 (Ky. 2002). Under the first prong, the defendant must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth

---

[7] *Strickland v. Washington*, 466 U.S. 668 (1984).

Amendment." *Id.* (citations omitted). Under the second prong, the defendant must show "the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 412. Prejudice requires that the "defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

There is a strong presumption that trial counsel is effective. *Id.* Likewise, a defendant is not guaranteed to perfect performance by counsel. *See McQueen v. Commonwealth*, 949 S.W.2d 70, 71 (Ky. 1997) ("A defendant is not guaranteed errorless counsel, or counsel adjudged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance."). Indeed, "[t]he critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Haight v. Commonwealth*, 41 S.W.3d 436, 441 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). With these principles in mind, we turn to Litsey's arguments on appeal.

**III.      ANALYSIS**

**A. Mitigation Evidence**

On appeal, Litsey argues her trial counsel failed to investigate and present appropriate mitigation testimony. Her argument is twofold: first, she argues that trial counsel should have obtained her mental health records and an expert witness to testify about her mental health diagnoses and effects; and second, trial counsel should have called Ashley to testify in mitigation. As an aside, Litsey criticizes trial counsel for calling her mother to testify in mitigation, and claims an expert and Ashley should have testified instead.

Defense counsel "has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." *Hodge v. Commonwealth*, 68 S.W.3d 338, 344 (Ky. 2001) (citing *Porter v. Singletary*, 14 F.3d 554, 557 (11th Cir. 1994)). And, as noted in *Haight*, "[a] reasonable investigation is not an investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources, but also with the benefit of hindsight, would conduct." *Haight*, 41 S.W.3d at 446.

Analyzing whether trial counsel failed to do so is subject to a three-part analysis. *Hodge*, 68 S.W.3d at 344. Under that analysis:

> *First*, it must be determined whether a *reasonable investigation* should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury

was a *tactical choice* by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. If the choice was not tactical and the performance was deficient, then it must be determined whether there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

*Id.* (emphasis original).

### 1. Mental Health Mitigation Evidence

Litsey first argues her trial counsel provided ineffective assistance because she failed to obtain Litsey's mental health records after becoming aware of Litsey's mental health background and failed to obtain a mental health expert to explain the effects of her diagnoses at sentencing. To show the effects of such failure, Litsey highlights the trial court's statement that it had received neither documentary evidence of Litsey's mental condition, nor any expert testimony on the issue.

Trial counsel's only step towards obtaining Litsey's mental health records was to speak with Karen. There is no evidence trial counsel attempted to have Litsey execute a release for her medical records or made any other effort to locate and obtain those records. Therefore, only lay witnesses, (including Litsey herself) were available to testify at sentencing regarding Litsey's mental health problems. Trial counsel admitted calling a mental health expert to explain Litsey's mental health background at sentencing would have been helpful.

-17-

Based on the trial court's comments alone, it might have been better in hindsight if trial counsel had taken further steps to obtain Litsey's mental health records and hire an expert. However, our analysis does not use hindsight to determine if a better strategy existed. While the trial court faulted Litsey for not providing documentation of mental health treatment or expert testimony, the trial court still heard testimony about Litsey's mental health diagnoses, that Litsey had been hospitalized for those diagnoses, that Litsey had been prescribed medication for those diagnoses, and that Litsey had significant problems in life because of those diagnoses. Litsey's mental health records and expert testimony may have amplified the lay testimony, but they would not have added anything new or greatly significant. Indeed, Dr. Drogin testified he could not comment on how Litsey's mental health diagnoses affected her actions on the night of these offenses.

Furthermore, looking at the entirety of the trial court's comments at sentencing shows Litsey suffered no prejudice. Rather than discounting or disbelieving Litsey's mental health history or diagnoses, the trial court instead faulted her failure to properly follow through with necessary treatment for those diagnoses. The trial court noted Litsey's habit was to stop taking her prescribed medication and substitute that medication with "street drugs." Moreover, the trial court noted Litsey was under the influence of drugs at the time of the offense.

-18-

Thus, it is unlikely Litsey's mental health records or any expert testimony would have changed the sentence handed down by the trial court.

### 2. Lay Testimony

Litsey next argues trial counsel was ineffective for not identifying Ashley as a mitigation witness to testify to Litsey's tumultuous childhood, as well as arguing trial counsel should have discovered Karen would be an ineffective mitigation witness. Indeed, Litsey argues trial counsel should have discovered Karen would be far more harmful than helpful, describing Karen's testimony in part as portraying Litsey as the "spawn of the devil"[8] and describing Litsey as a "psychotic drug addict."

As an initial matter, Litsey concedes it is unclear whether she had even conveyed information about her rough childhood and chaotic home life to her trial counsel. Moreover, at the hearing, Litsey admitted she advised trial counsel to call her daughter and mother as mitigation witnesses. Furthermore, Litsey does not claim she asked trial counsel to call Ashley. As the Commonwealth points out, when it comes to such mitigation witnesses, "clearly the best source for this information [about her childhood] was Litsey herself." If Litsey felt Ashley was

---

[8] Appellant's Brief at 12. In her reply brief, Litsey acknowledges that Karen never specifically referred to Litsey as the "spawn of the devil," but that the descriptor was intended to color the negative aspect of Karen's testimony in Litsey's early life. Appellant's Reply Brief at 2, n.1.

such a vital mitigation witness, Litsey should have so advised her trial counsel. Likewise, much of what Ashley said could have been provided by Litsey herself.

Nor was trial counsel ineffective for calling Karen as a mitigation witness. Litsey's strongest complaint was Karen's comment that "she could not live with a psychotic drug addict," which the trial court highlighted during its comments at sentencing. While not the most sympathetic comment about one's adult child, particularly when taken out of context, the Commonwealth correctly points out the statement was made in reference to a question on cross-examination about why Litsey was not living with Karen at the time of the offense. During direct examination, Karen had also testified Litsey was "psychotic" on the night of the offense, opining that one couldn't avoid being psychotic while on drugs and neglecting sleep, but Karen used that to explain why she believed Litsey did not intentionally injure Officer Besednjak.

While the trial court did highlight Karen's comment during sentencing, it is clear Karen did not intend for the trial court to do so. Indeed, when the trial court stated, "What concerns me the most is the testimony from Karen Litsey when she said, 'I cannot live with a psychotic drug addict,'" Karen attempted to respond, only to be silenced and ordered to leave the courtroom by the trial court. Litsey herself testified she did not believe her mother intended to

"sabotage" her.[9]  Furthermore, Karen's statement was not the only reference to Litsey's drug addiction and mental illness.  During her testimony at sentencing, Litsey even referred to herself as a "mentally ill drug addict."

Furthermore, Karen's testimony was more favorable in aggregate than Litsey would have us believe.  Karen painted a picture of Litsey's struggles through childhood, especially after suffering sexual abuse at a young age.  Karen also described Litsey as a good mother to Litsey's own daughter, and said Litsey needed treatment not incarceration.

Even if Litsey's trial counsel was ineffective in failing to obtain Litsey's medical records, calling an expert witness, or calling Karen instead of Ashley, we believe Litsey suffered no prejudice due to the damning aggravating factors in this case.  Those aggravating factors include Litsey's lengthy criminal record, her failure to benefit from probation in the past, her failure to address her mental health diagnoses, self-medicating with drugs, her intoxication (and the length of her intoxication) at the time of the offense, the victim's status as a police officer executing his duties at the time of the offense, and the extent of the victim's injuries.  In light of those overwhelming aggravating factors, we believe any such mitigating evidence would not have had an effect on her ultimate sentence.

---

[9] Moreover, during the hearing, Litsey testified she wanted trial counsel to call Karen, even with the neglect and abuse Karen inflicted on her.

**B. Decision to Seek a Bench Trial**

Litsey next argues her trial counsel was ineffective for advising her to seek a bench trial rather than a jury trial. Litsey's trial counsel testified she believed Litsey would not receive a fair trial in Bullitt County, but she did not file a motion for a change of venue. Litsey argues that if her trial counsel had done so, a motion for a change of venue would likely have been granted. As to prejudice, Litsey argues the decision to seek a bench trial robbed her of the safeguards guaranteed by *voir dire*, that the trial court as trier of fact possessed knowledge of evidence inadmissible at trial, and that conviction by jury would have required the unanimous agreement of twelve citizens rather than a single judge.

Both Litsey and the Commonwealth agree that Litsey requested trial counsel make a motion for change of venue. Trial counsel testified she believed Litsey could not get a reasonable jury verdict in Bullitt County. However, trial counsel's subjective belief does not make it so. Nor does that mean that a motion for a change of venue would have been granted.

As Litsey recognizes, a change of venue is required when "(1) there has been prejudicial news coverage, (2) it occurred prior to trial, and (3) the effect of such news coverage is reasonably likely to prevent a fair trial." *Brewster v. Commonwealth*, 568 S.W.2d 232, 235 (Ky. 1978) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966)). Kentucky Revised Statutes (KRS) 452.220(2) sets

forth the procedure for a defendant to file a motion for a change of venue. That motion must be made in writing, be verified by the defendant, and must attach "the affidavits of at least two (2) other credible persons, not kin to or of counsel for the defendant, stating that they are acquainted with the state of public opinion in the county objected to, and that they verily believe the statements of the petition for the change of venue are true." *Id.*

Litsey argues the first two elements of *Brewster* exist, and "based on the extensiveness of the media coverage and the status of the alleged victim, a policeman [sic] serving in the police department for the county seat, it is likely the third requirement would have been met as well." We note both parties agree there was news coverage of this offense, however, the record does not contain any copies of the news articles nor any copies of news videos. The record does not even contain summaries of the contents of such news articles. All we (and the trial court) have are titles of news stories, most from television news affiliates or newspapers outside Bullitt County.

Regarding Litsey's conclusion as to the elements of *Brewster*, that case further explains "the mere fact that jurors may have heard, talked, or read about a case is not sufficient to sustain a motion for change of venue, absent a showing that there is a reasonable likelihood that the accounts or descriptions of the investigation and judicial proceedings have prejudiced the defendant."

*Brewster*, 568 S.W.2d at 235.  While it is true the victim in this case is a police officer in the county seat of Bullitt County, Litsey's conclusion that the prior news coverage would have prevented a fair trial is nothing more than speculation.  She offers none of the affidavits required under KRS 452.220(2), nor any testimony from members of the community about the sentiment towards Litsey or this case at the time of the offense.

Furthermore, while trial counsel[10] may have felt Litsey would not get a reasonable verdict with a jury in Bullitt County, trial counsel's subjective belief does not make a successful change of venue motion any more likely.  Granting or denying a motion for a change of venue is within the discretion of the trial court and is reviewed for abuse of discretion.  *Gill v. Commonwealth*, 7 S.W.3d 365, 369 (Ky. 1999).  A trial court's decision regarding a change of venue motion is not often reversed.  *See Huffman v. Commonwealth*, No. 2018-SC-000088-MR, 2019 WL 2463279, at *3 (Ky. Jun. 13, 2019) (Surveying case law regarding review of appellate decisions, concluding that opinions reversing trial courts for denying motions to change venue "based on pre-trial publicity appears to be the exception rather than the rule.").  Ironically, had trial counsel formally sought a change of venue, and such motion been denied, trial counsel would be left with only the

---

[10] Trial counsel was not a resident of Bullitt County.

options of attempting to mitigate bias through challenging individual jurors in *voir dire* or, as trial counsel did here, advising Litsey to seek a bench trial.

Even if trial counsel could be considered ineffective for not filing a motion for a change of venue, we do not believe Litsey suffered any prejudice. While Litsey argues the trial court had access to knowledge about her criminal history that would have been inadmissible during the guilt phase of trial, when the trial court sits as the finder of fact, it is presumed the trial court will ignore any inadmissible evidence. *G.E.Y. v. Cabinet for Human Resources*, 701 S.W.2d 713, 716 (Ky. App. 1985). Nor do we find that waiver of *voir dire* or unanimity of jurors had any effect on the outcome of the trial. The evidence of Litsey's guilt to the underlying offenses was overwhelming and Litsey does not appear to argue otherwise. Furthermore, given the serious and numerous aggravating factors, measured against the mitigating factors (as identified by the trial court at sentencing), Litsey only received a forty year sentence where her total exposure was a life sentence (which the Commonwealth requested).

## IV.      CONCLUSION

Litsey's trial counsel did not provide ineffective assistance in presenting mitigation evidence or advising Litsey to seek a bench trial, especially in light of the overwhelming amount of evidence as to Litsey's guilt and the

serious aggravating factors in this case. The trial court correctly denied Litsey's motion under RCr 11.42.

We view any remaining contentions of error as moot, unpersuasive, unpreserved, or without merit.

For the foregoing reasons, the judgment of the Bullitt Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Elias Kang-Bartlett
Aaron P. Riggs
La Grange, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky